# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In Re:<br><br>Pro-Mark Services, Inc.,<br><br>                 Debtor. | Case No.: 24-30167<br><br>Chapter 7 |

## CAPITAL CREDIT UNION'S RESPONSE TO HARTFORD'S OBJECTION TO THE UNITED STATES AIR FORCE'S MOTION TO APPROVE JOINT SETTLEMENT BETWEEN THE UNITED STATES AIR FORCE AND THE TRUSTEE

### INTRODUCTION

The United States Air Force (the "USAF") and the Chapter 7 Bankruptcy Trustee, Erik A. Ahlgren (the "Trustee"), moved for this Court Approval of their Joint Settlement (as hereinafter defined). Hartford Accident and Casualty Company ("Hartford") objected to the motion, arguing this Court cannot approve the Joint Settlement because the Joint Settlement would impair Hartford's contractual and common law rights with respect to the contracts between the USAF and Debtor. Capital Credit Union ("CCU"), a secured creditor, hereby responds to Hartford's objection, taking the position that it is premature for this Court to determine whether to approve the Joint Settlement because additional evidence is needed to determine the scope of Hartford's right to equitable subrogation—the paramount issue for this Court when determining whether to approve the Joint Settlement. Accordingly, CCU respectfully requests that this Court delay its ruling on whether to approve the Joint Settlement to allow the parties additional time to conduct necessary discovery.

**FACTUAL BACKGROUND**

**I.      The USAF's Relationship with Pro-Mark**

Debtor Pro-Mark Services, Inc. ("Pro-Mark") is a general contracting construction company. ECF No. 72, at 1, ¶ 1. Between September of 2020, and January of 2024, the USAF awarded Pro-Mark forty-one (41) construction contracts related to USAF bases in Colorado, Nebraska, and North Dakota (the "Air Force Contracts").[1]

**II.     Hartford's Relationship with Pro-Mark.**

Pro-Mark obtained payment and performance bonds from Hartford when performing work for federal construction contracts, ECF No. 72, at 1, ¶ 2, entering into a General Indemnity Agreement with Hartford on July 14, 2020 (the "GIA"). ECF No. 72, at 1, ¶ 3; ECF No. 72-1. Hartford subsequently provided payment and/or performance bonds to Pro-Mark for the following Air Force Contracts:

- Contract FA2517-20-D-0010, Task Order FA2543-22-F-0058 (Buckley AFB);
- Contract FA4659-17-D-C002, Task Order FA4659-22-F-0059 (Grand Forks AFB);
- Contract FA4528-20-D-004 (Minot AFB);
- Contract FA4528-20-D-0004, Task Order FA4528-21-F-0091 (Minot AFB); and
- Contract FA4600-16-D-6003, Task Order FA4600-20-F-0192 (Offutt AFB).

(the "Bonded Air Force Contracts") ECF No. 158; ECF No. 171, at 2, ¶ 3.

**III.    CCU's Relationship with Pro-Mark.**

On December 31, 2021, Pro-Marked entered into a loan agreement with CCU in the sum of $14,750,000.00 ("Loan No. 1"). ECF No. 72, at 1-2, ¶¶ 4-5; ECF No. 72-2; ECF No.

---

[1]   Additional information on the Air Force Contracts—including the Contract identification number, award date, location, and amount paid to date under the contract—is available at ECF No. 158.

2

72-3. To secure Loan No. 1, Pro-Mark granted CCU a security interest in certain personal property collateral, including accounts receivable. ECF No. 72-4, at 1. CCU and Pro-Mark modified Loan No. 1 on July 14, 2022, July 19, 2022, January 30, 2023, May 2, 2023, and January 12, 2024, with CCU retaining its security interest in the collateral. ECF No. 72, at 2, ¶ 8; ECF No. 72-6.

Also on December 31, 2021, Pro-Mark entered into a second loan agreement with CCU in the sum of $1,000,000.00 ("Loan No. 2"). ECF No. 72, at 2, ¶¶ 9-10; ECF No. 72-7; ECF No. 72-8. To secure Loan No. 2, Pro-Mark granted CCU a security interest in certain personal property collateral, including accounts receivable. ECF No. 72-9, at 1. CCU and Pro-Mark modified Loan No. 2 on May 2, 2023, and January 12, 2024, with CCU retaining its security interest in the collateral. ECF No. 72, at 3, ¶ 12; ECF No. 72-10.

## IV. CCU's Relationship with Hartford.

On July 14, 2022, Hartford and CCU entered into an Intercreditor Collateral Agreement (the "Intercreditor Agreement"), ECF No. 72, at 3 ¶ 13; ECF No. 72-11, the purpose of the which was "[t]o establish the relative priorities of [Hartford] and [CCU] and their respective rights in and to [Pro-Mark's] assets and properties[.]" ECF No. 72-11, at 1, Recitals § 8. To that end, Hartford agreed to subordinate its "Liens" in "Bank Priority Collateral" to CCU's "Liens" in "Bank Priority Collateral," ECF No. 72-11. At 6, Covenants § 3, with CCU reciprocally agreeing to subordinate its "Liens" in "Surety Priority Collateral" to Hartford's "Liens" in "Surety Priority Collateral." ECF No. 72-11, at 6, Covenants § 4.

## PROCEDURAL BACKGROUND

On April 22, 2024 (the "Petition Date"), Pro-Mark filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code in the U.S. Bankruptcy Court for the District

3

of North Dakota.  ECF No. 72, at 3, ¶ 15.  The Trustee was appointed to serve as trustee of Debtor's estate.  ECF No. 2.

On the Petition Date, the Air Force Contracts were in various stages of performance, ranging from no performance, to being substantially completed.  ECF No. 156, at 1, ¶ 3.  Debtor has ceased its operations, and is incapable of satisfying its remaining obligations under the Air Force Contracts.  ECF No. 156, at 1, ¶ 4.  Accordingly, on July 25, 2024, the Trustee moved to reject the Air Force Contracts.  ECF No. 54.  This Court approved the rejection.  ECF No. 111.

On November 4, 2024, the USAF and the Trustee entered into a Joint Settlement Between the United States Air Force and the Trustee (the "Joint Settlement").  ECF No. 156.  The purpose of the Joint Settlement was to provide: (1) "the most expedient, fair, and reasonable terms to expeditiously resolve the attendant difficulties of collection of amounts owed to the estate[;]" (2) "the most expedient, fair, and reasonable terms to expeditiously resolve potential concerns over the complexity of litigation, the expenses, inconvenience, and delay necessarily attending it[;]" and (3) "the most expedient, fair, and reasonable terms to expeditiously resolve the concerns of creditors[.]"  ECF No. 156, at 2, ¶¶ 7-9.  To that end, under the Joint Settlement: (a) the USAF would pay $587,707.49 to Debtor's estate for prepetition work performed; (b) the USAF would have no further obligations to Debtor's estate under the Air Force Contracts; (c) the USAF would have 90 days to file any proof of claim; and (d) Debtor's property remaining on USAF installations would be deemed abandoned, allowing the USAF to remove or dispose of the abandoned property (except for a construction trailer, that had already been sold to 3JK Construction, LLC).  ECF No. 156, at 6-7, ¶¶ 22-25.  On November 5, 2024, the USAF and the Trustee filed their Motion to Approve Joint

4

Settlement Between the United States Airforce and the Trustee Granting [sic]; Motion Granting Relief from the Automatic Stay to Allow for Termination of Executory Contracts; Motion of Extension of Time to File Proofs of Claim; and Resolution oof Respective Claims and Outstanding Contractual Obligations Between the Parties (the "<u>Motion</u>"). ECF No. 157.

In response to the Motion, Hartford filed its Hartford's Objection to the United States Air Force's Motion to Approve Joint Settlement Between the United States Air Force and the Trustee (the "<u>Objection</u>"). ECF No. 171. In the Objection, Hartford argued this Court should reject the Joint Settlement because: (1) the Joint Settlement did not adequately take into account Hartford's equitable subrogation rights; (2) the Joint Settlement did not adequately take into account the assignment and trust provisions of the GIA; and (3) the Joint Settlement did not adequately take into account Hartford's ability to setoff amounts owed by the USAF to Pro-Mark. ECF No. 171, at 8-16.

A hearing on the Motion is currently set for December 13, 2024. As outlined herein, CCU requests a continuance of that hearing to allow the interested parties to conduct discovery on issues surrounding the Joint Settlement, the Motion, and the Objection.

<u>**LAW AND ARGUMENT**</u>

When a surety completes work on a bonded project, the common law right to equitable subrogation gives the surety a paramount interest in payments due for the work performed. *See Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 141 (1962); *Prairie State Bank v. United States*, 164 U.S. 227, 240 (1896). The surety has this right whether its bond is for performance or payment. *See Pearlman*, 371 U.S. at 139. And this right relates back to the date of the surety's issuance of the bonds for the contract. *See Prairie State*, 164 U.S. at 240. Applied here, to the extent that Hartford has actually incurred costs to complete the Bonded Air Force

5

Contracts in accordance with its bond obligations, then Hartford's right to equitable subrogation would give Hartford a superior claim to the amounts due under the Bonded Air Force Contracts that would reimburse Hartford for its incurred costs.

The USAF and the Trustee assert that the USAF owes the Debtor's estate $587,707.49 for work performed under the Air Force Contracts. ECF No. 156, ¶ 17. Hartford maintains that it is entitled to this entire sum because it "has incurred and paid losses of $646,329.66, and [it] is still exposed to unpaid claims totaling at least $213,736." ECF No. 171, at 4, ¶ 17 (citation omitted); *see also id.* at ¶ 18 ("Hartford has further incurred and paid losses of $183,819 for Bonds executed in favor of the Debtor for Air Force Contracts at Offutt Air Force Base." (citation omitted)). But this argument is incomplete because Hartford does not identify on what Bonded Air Force Contracts it has incurred expenses, and what portion—if any—of the $587,707.49 in payments owing is for work performed on Bonded Air Force Contracts. Absent this information, CCU is unable to determine whether Hartford's right to equitable subrogation would apply to the funds at issue in the Joint Settlement.

CCU anticipates that Hartford may argue that such information is unnecessary because it may setoff funds owing from the USAF to Debtor under the Air Force Contracts, even if separate from work performed by Harford on the Bonded Air Force Contracts—i.e., payments not subject to Hartford's right to equitable subrogation. *See* ECF No. 171, at 15-16. For this argument, Hartford cites *In re Larbar Corp.*, 177 F.3d 439 (6th Cir. 1999), *District of Columbia v. Aetna Insurance Co.*, 462 A.2d 428 (D.C. 1983), and *Transamerica Insurance Co. v. United States*, 989 F.2d 1188 (Fed. Cir. 1993). But, generally speaking, these cases hold that a surety is only allowed to setoff payments owing—when not directly subject to a right of equitable subrogation—when no third party possesses a competing interest in the payments owed. *See*

6

*Larbar*, 177 F.3d at 447 ("Because no legal rights of strangers or third persons will be prejudiced by allowing [the surety] a setoff, it is entitled to the presumption that such a setoff is appropriate in this case."); *Aetna Ins.*, 462 A.2d at 432 ("Significantly, we have no such competing claims in the present case."); *Transamerica Ins.*, 989 F.2d at 1194 ("In each of these other cases, it is certainly true that the surety's equitable right to subrogation should be counterbalanced by the other interests involved. It is 'equitable' in those situations to give the surety top priority only over funds related to the contract it completed. However, as in *District of Columbia*, there are no other interests involved here, except for the defaulting contractor."). Those cases do not apply to this case because CCU—by virtue of its perfected security interest in Pro-Mark's accounts receivables—has a competing interest in payments owing under the Air Force Contracts that are not subject to Hartford's right to equitable subrogation.

CCU further anticipates that Hartford will argue that CCU's interest in payments due under the Air Force Contracts is inferior to its rights because of the GIA and the Intercreditor Agreement. *Cf.* ECF No. 171, at 13 (Hartford arguing an interest in the funds, beyond its rights in equitable subrogation, because of the Assignment and Trust Fund provisions of the GIA). As referenced above, the Intercreditor Agreement established "the relative priorities of [Hartford] and [CCU] and their respective rights in and to [Pro-Mark's] assets and properties[.]" ECF No. 72-11, at 1, Recitals § 8; *see also* ECF No. 72-11, at 2, Covenants § 1 ("The above Recitals are contractual and incorporated into these Covenants."). Relevant here, the parties agreed that:

> [r]egardless of the relative times of the attachment or perfection of <u>Liens</u> or the order of filing of security agreements, financing statements, or other documents, the <u>Liens</u> of [Hartford] in the <u>Surety Priority Collateral</u> shall in all respect be senior and superior to the <u>Liens</u> of [CCU] in the <u>Surety Priority Collateral</u>.

7

ECF No. 72-11, at 6, Covenants § 4 (emphasis added).  Stated another way, CCU agreed to subordinate its "Liens" in "Surety Priority Collateral" to Hartford's "Liens" in "Surety Priority Collateral."  *Id.*  Therefore, Hartford's argument requires the payments owing on the Air Force Contracts –that are not subject to a claim of equitable subrogation—to be: (1) "Surety Priority Collateral"), (2) in which Hartford possessed a "Lien."  *Id.*

The Intercreditor Agreement defines "Surety Priority Collateral" as including "all Proceeds" of "Bonded Contracts."  ECF No. 72-11, at 6, Covenants § 2.  But the Intercreditor Agreement did not give Hartford a "Lien" in Surety Priority Collateral.  *Cf.* ECF No 72-11, at 4, Covenants § 2 (defining "Lien" as a "mortgage, deed to secure debt, deed of trust, lien, pledge, charge, security interest, security title or encumbrance of any kind, whether created by agreement or by the possession of property or conferred by statute or applicable law").  Because the Intercreditor Agreement's definition of "Surety Priority Collateral" did not give Hartford a mortgage, deed to secure debt, deed of trust, lien, pledge, charge, security interest, security title, or encumbrance of any kind in "Proceeds" of "Bonded Contracts," the Intercreditor Agreement did not grant Hartford a Lien in payments due under the Air Force Contracts.

Still, Hartford argues the GIA gave it this interest.  *See* ECF No. 171, at 13 (Hartford arguing an interest in the funds, beyond its rights in equitable subrogation, because of the Assignment and Trust Fund provisions of the GIA).  This Court has already determined that the GIA did not create a Lien via a trust when the GIA failed to create a trust.  *See* ECF No. 122, at 75:10-15.  Additionally, the GIA did not create a "Lien" through an assignment.  The GIA could not assign to Hartford the right to the proceeds of the Air Force Contracts because Pro-Mark lacked such a right at the time it signed the GIA.  A party cannot assign rights that

8

do not exist at the time of the purported assignment. *See* Restatement (Second) of Contracts § 321(2) (1981); *see also* 6 Am. Jur. 2d Assignments § 14 ("A contract to make a future assignment of a right, or to transfer proceeds to be received in the future by the promisor, is not an assignment."); 2A Anderson U.C.C. § 2-210:48 (3d ed.) ("[A]n assignment of rights that are expected to arise under contracts not yet formed or entered into is ineffective to transfer prospective rights[.]"). When Pro-Mark and Hartford entered into the GIA on July 14, 2020, the USAF had not yet awarded the Air Force Contracts—or the Bonded Air Force Contracts—to Pro-Mark. Because the Air Force Contracts did not exist when Pro-Mark entered into the GIA, the GIA could not assign to Hartford the right to payments due under the Air Force Contracts. *See* Restatement (Second) of Contracts § 321(2); 6 Am. Jur. 2d Assignments § 14; 2A Anderson U.C.C. § 2-210:48.

Absent an assignment[2] or trust in the proceeds from the Air Force Contracts, Hartford would lack a Lien in the payments due under the Air Force Contract. Absent a Lien in the payments due under the Air Force Contracts, CCU's Lien—its properly perfected security interest in Pro-Mark's accounts receivable—was not subordinated to Hartford. *Cf.* ECF No. 72-11, at 6, Covenants § 4 ("Regardless of the relative times of the attachment or perfection of Liens or the order of filing of security agreements, financing statements, or other documents, the Liens of [Hartford] in the Surety Priority Collateral shall in all respect be senior and superior to the Liens of [CCU] in the Surety Priority Collateral." (emphasis added)).

---

[2] It is unclear whether an assignment would even qualify as a "Lien." *Cf.* ECF No 72-11, at 4, Covenants § 2 ("defining "Lien" as a "mortgage, deed to secure debt, deed of trust, lien, pledge, charge, security interest, security title or encumbrance of any kind, whether created by agreement or by the possession of property or conferred by statute or applicable law"). However, *arguendo*, CCU assumes that an assignment would qualify as a "Lien."

9

Accordingly, unless Hartford possesses a claim arising in equitable subrogation to all payments due under the Air Force Contracts, CCU would possess a superior claim.

## CONCLUSION

CCU does not, at this time, assert that its perfected security interest in the payments due under the Air Force Contracts is superior to that of Hartford's. That is because CCU does not dispute that Hartford's right to equitable subrogation under *Pearlman* and its progeny gives Hartford a superior claim to amounts due for work performed by Hartford to complete the Bonded Air Force Contracts. But, without additional information from Hartford and the USAF, CCU is unable to fully evaluate what amount, if any, would be subject to a Hartford's claim for equitable subrogation. Accordingly, CCU respectfully requests that this Court continue the currently scheduled hearing so that the parties may engage in discovery to narrow—or eliminate—potential disputes regarding appropriate claims to payments due under the Air Force Contracts.

Dated this 11th day of December, 2024.

**VOGEL LAW FIRM**

BY: /s/ Drew J. Hushka
Caren W. Stanley (#06100)
cstanley@vogellaw.com
Drew J. Hushka (#08230)
dhushka@vogellaw.com
218 NP Avenue
PO Box 1389
Fargo, ND  58107-1389
701.237.6983
ATTORNEYS FOR CAPITAL CREDIT UNION

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 11th day of December, 2024, a copy of the foregoing was served electronically upon filing via the ECF system.

/s/ *Drew J. Hushka*
Drew J. Hushka

11