EXHIBIT A

# General Indemnity Agreement

**THE HARTFORD**

This General Indemnity Agreement ("Agreement") is made and entered into by the undersigned Indemnitors, for themselves and others, in favor of and as an inducement to Hartford to Underwrite Bonds on behalf of one or more Indemnitors. In consideration of said Underwriting, the Indemnitors jointly and severally acknowledge and agree as follows:

1. **Definitions**. As used in this Agreement, all defined words and terms shall be understood to include each and every tense and form of said word or term along with its/their singular, plural, feminine or masculine form as the case or usage may warrant.

    (a) **"Indemnitor"** shall include, among others, each and every one of the following persons or entities on behalf of itself and all of its existing or prospective heirs, personal representatives, executors, administrators, parent companies, purchasers, successors (through asset acquisition or otherwise), assigns, related entities, co-venturers, joint ventures, affiliates, subsidiaries, divisions, and marital communities along with any entity (whether partially or wholly owned and/or controlled) of whatever description and whenever formed or acquired in which any of the foregoing persons or entities have an ownership or beneficial interest. Indemnitor shall also include any Principal.

| Indemnitor's Name | Address | Tax ID / Social Security Number |
|---|---|---|
| Pro-Mark Services, Inc. | 3275 Oak Ridge Loop E, West Fargo, ND 58078 | [redacted] |
| Connie L. Berg | 5012 2nd Street E, West Fargo, ND 58078 | [redacted] |
| Kyle R. Berg | 5012 2nd Street E, West Fargo, ND 58078 | [redacted] |

   (b) **"Default"** shall include any one or more of the following:

   i) an Indemnitor's breach, abandonment, failure, refusal or inability to timely perform, in whole or in part, any contract for which a Bond has been Underwritten;

   ii) an Indemnitor's failure, refusal or inability to timely satisfy any debt or obligation incurred as part of any contract for which a Bond has been Underwritten;

   iii) an Indemnitor's failure, refusal or inability to timely satisfy any term or condition of any Bond, any contract for which a Bond has been Underwritten or this Agreement;

   iv) an Indemnitor's use of contract funds in any manner which is inconsistent with any obligation for which a Bond has been Underwritten or the requirements of this Agreement;

   v) a declaration of default, a demand for Hartford to pay or perform, or a termination for default asserted by an obligee relating to any contract for which a Bond has been Underwritten;

   vi) a dissipation or diversion of assets by any Indemnitor which impairs the performance of any term or condition of this Agreement or any contract for which a Bond has been Underwritten or any Bond;

vii)  an Indemnitor's becoming insolvent or the voluntary or involuntary commencement of any proceeding by or against the Principal on the basis of its actual or perceived insolvency, including, without limitation, the appointment of a receiver or trustee, reorganization, liquidation or any similar proceeding;

viii) the commencement or continuation of any proceeding which deprives or interferes with the Principal's performance of any obligation for which a Bond has been Underwritten or its use of any supplies, tools, plant, machinery, equipment, wherever located, or the work under any contract for which a Bond has been Underwritten:

ix)  the death, disappearance, adjudged incompetence, incarceration, commitment or felony conviction of any Principal;

x)   any material change in the character, financial condition, identity, control, management, beneficial ownership or existence of any Principal;

xi)  an Indemnitor's providing, directly or indirectly, any false or materially misleading statement, document or disclosure to Hartford, or an Indemnitor's failure to fully and timely disclose material information bearing upon either its ability to perform any obligation for which a Bond has been issued or under this Agreement.

(c) **"Principal"** shall refer to any person or entity in whose name a Bond is executed.

(d) **"Hartford"** shall include, individually or collectively, Hartford Fire Insurance Company, Hartford Casualty Insurance Company, Hartford Accident and Indemnity Company, Hartford Underwriters Insurance Company, Twin City Fire Insurance Company, Hartford Insurance Company of Illinois, Hartford Insurance Company of the Midwest, Hartford Insurance Company of the Southeast and any of said companies current or future, direct or indirect insurance company affiliates, subsidiaries, parents, assigns, successors, divisions, co-sureties, reinsurers, or any other person or entity Underwriting any Bond at Hartford's request.

(e) **"Loss"** shall include all manner of losses, costs, expenses or fees of any kind or nature which are paid or incurred by Hartford as a result of or in any way relating to the entering into and enforcement of this Agreement or the Underwriting of any Bonds. Loss shall include, without limitation, any and all expenditures relating to Hartford's financial investigations, claim investigations, claim payments, payments to discharge liability and Bond related litigation of any nature, legal, expert, administrative, consultant and other professional fees and costs, court costs, travel expenses, unpaid premiums, unpaid loans which may be extended to, or guaranteed for or on behalf of any Indemnitor and interest on sums expended at the maximum lawful rate.  Loss shall be determined broadly in favor of Hartford.

(f) **"Bond"** shall include any and all bonds, undertakings, guarantees, commitments, obligations of suretyship and like instruments Underwritten by Hartford or others, including all riders, renewals, continuations, endorsements, changes or modifications on behalf of or at the request of Indemnitors or for which Hartford has an obligation pursuant to a merger, acquisition, asset purchase or similar transaction.  For purposes of this Agreement only, in the event Hartford or its authorized agent issues a prequalification or bondability letter or any similar expression of opinion ("Prequalification Letter") on behalf or at the request of any Indemnitor, said Prequalification Letter shall fall within this Agreement's definition of "Bond."

(g) **"Underwrite"** shall include all manner of underwriting, furnishing, issuing, procuring, analyzing, assuming, executing, considering, renewing, extending, altering, modifying, participating in or continuing any Bond.

(h) **"Books and Records"** shall include, without limitation, all manner of books, records, personal and corporate financial statements, bank records, bank statements, cancelled checks, tax returns, computer systems, computer programs, software, accounts, invoices, contracts, bid documents, contract documents, subcontracts, purchase orders, correspondence, plans, design documents, record drawings, as built drawings, requests for information, claims, change orders, submittals, schedules, vouchers, account statements, reports, audits, work papers, memos, correspondence, emails, voice mail, photographs, video, and the like, however, wherever and in whatever manner created, stored or maintained.

2. **Application of Agreement**. This Agreement shall apply to all Bonds Underwritten by Hartford, whether prior to, simultaneously with, or subsequent to this Agreement's execution (1) on behalf or at the request of any Indemnitor; or (2) in connection with contracts in which any Indemnitor has an interest; or (3) for or at the request of any present or future parent, affiliate or subsidiary of any Indemnitor; or (4) for any third party at the request of any Indemnitors. This Agreement is solely for the benefit of Hartford and no other person or entity shall have any rights under this Agreement. The rights of Hartford under this Agreement are in addition to and not in lieu of any and all rights granted by law. Hartford shall have the absolute right to apply any amount owed to any Indemnitor against the amount owed by that Indemnitor to Hartford including the right to set-off any debt owed to any third party against any liability of any Indemnitor that owns or controls said third party.

3. **Premium**. Indemnitors shall timely pay all Bond premiums.

4. **Declination of Bonds**. Hartford shall have the absolute right to cancel, non-renew, modify or decline execution of any Bonds with or without notice to Indemnitors. Hartford shall have no obligation or liability to Indemnitors or others for said cancellation, non-renewal, modification or declination, nor shall such action in any way affect or diminish Indemnitors' obligations to Hartford under this Agreement or otherwise. Hartford's right to decline Bonds includes without limitation, its declination of final Bonds after having Underwritten a bid bond, a Prequalification Letter, or like instruments.

5. **Indemnity and Exoneration**. The Indemnitors shall at all times indemnify, exonerate and hold Hartford harmless from and against all Loss, claims, demands, liabilities, suits and causes of action which are in any way related to any Underwriting activities, Bonds or this Agreement. Indemnitors shall immediately notify Hartford in writing of any demand, notice, suit, claim, action or proceeding relating to any Bond. Hartford may bring separate suits on this Agreement as causes of action accrue, and the bringing of such suit or suits or the recovery of a judgment upon any cause of action shall not prejudice or bar the bringing of additional suits or causes of actions. Confirmation of payments through Hartford's electronic claim system, copies of releases, or other evidence of such payments which are maintained by Hartford in the ordinary course of business shall be prima facie evidence of the existence and extent of the liability of the Indemnitors to Hartford.

6. **Demand for Collateral**. Upon Hartford's demand, the Indemnitors shall immediately deposit with Hartford funds, as collateral, in an amount Hartford deems necessary at the time of said demand to protect itself from actual or anticipated Loss. Demand may be made as soon as a) Hartford determines that liability exists; or b) Hartford has a reasonable basis to believe that it may incur liability or Loss; or c) in the event any Indemnitor diverts contract funds relating to any Bond in violation of Paragraph 11 of this Agreement or applicable law; or d) in the event Hartford deems itself insecure, whether or not Hartford has made any payment or established any reserve and whether or not it has received notice of, accepted or denied any claim in whole or in part. Hartford shall have no duty to invest or pay interest on any such collateral deposit. Said collateral may be used by Hartford in its sole discretion at any time without notice to the Indemnitors to accomplish the purposes of this Agreement. In the event Hartford accepts collateral other than funds, Hartford is authorized, without notice to Indemnitors, to manage, borrow against, sell, pledge, convey or dispose of said collateral by public or private sale and shall not incur any liability to Indemnitors or others for said actions. The Indemnitors shall be entitled to the return of any collateral or collateral proceeds which may remain upon satisfactory evidence to Hartford in its sole discretion that its liability under any and all Bonds has been released and discharged without Loss and Indemnitors have fully complied with this Agreement. The Indemnitors acknowledge and agree that their failure to immediately deposit with Hartford any sums demanded under this section shall cause irreparable harm to Hartford for which it has no adequate remedy at law. Indemnitors agree and shall stipulate in any legal proceeding that Hartford is entitled to injunctive relief for specific performance of said collateral deposit obligation and do hereby expressly waive and relinquish any claims or defenses to the contrary.

7. **Claim Settlement\Mitigation**. Hartford shall have the absolute right to adjust, settle, dispute, litigate, appeal, finance, or compromise any claim, demand, suit, judgment or exposure relating to any Underwriting activities or Bonds without affecting the Indemnitors' liability under this Agreement and Hartford's determination shall be binding upon the Indemnitors. This absolute right includes the right, but not the obligation, to advance funds or guarantee loans to any Indemnitor. The Indemnitors shall be obligated to Hartford for all payments occasioned thereby whether said payments were made by Hartford in the belief that either (1) Hartford was or might be liable therefore; or (2) payments were

necessary or advisable to protect Hartford's rights or to mitigate Hartford's potential liability or Loss. Upon Hartford's demand, Indemnitors shall establish a trust account or accounts with a financial institution acceptable to Hartford, and shall deposit all monies from any contracts for which a Bond has been Underwritten into said trust account(s). The trust account(s) shall be restricted, requiring the signature of an authorized representative of Hartford on all checks or other withdrawal orders drawn against said account(s).

8. **Books and Records**. Hartford shall have the absolute right to review and copy all Books and Records of the Indemnitors. Hartford's access to said Books and Records shall continue until Hartford's liability under all Bonds has been terminated with no Loss and Indemnitors have satisfied all of their obligations under this Agreement. Any person or entity having any manner of relationship with an Indemnitor, including, without limitation, financial institutions, Bond obligees, contracting parties, governmental entities, providers of legal, accounting or engineering services and all other persons or entities is/are expressly authorized by this Agreement to discuss and furnish to Hartford any Books and Records, information or documentation requested including work papers and document drafts.

9. **Assignment**. Effective on the earlier of the date of this Agreement or the date on which Hartford first Underwrites a Bond to, at the request of or on behalf of any Indemnitor, all Indemnitors irrevocably assign, transfer and convey the following to Hartford;

   (a) All rights of the Indemnitors in, arising from, or related to Bonds or any bonded or unbonded contracts, subcontracts and subcontract bonds and any extensions, modifications, alterations or additions thereto; and

   (b) All right, title and interest of the Indemnitors in and to; (1) the work performed on any Bonded or unbonded contract; and (2) all supplies, tools, plant, machinery, inventory, equipment and materials; and (3) all materials purchased for or chargeable to any contract or Bond which may be in the process of manufacture, construction or transportation, or in storage anywhere; and (4) Books and Records, patent rights, copyrights, trademarks, and any and all bond claims or other affirmative claims; and (5) computers, computer systems, programs and licenses; and

   (c) All rights arising out of insurance policies in which any Indemnitor has an interest as a policyholder, beneficiary or otherwise; and

   (d) Any and all accounts receivable, accounts, chattel paper, documents of title, intangibles, claims, judgments, choses in action, purchase orders, bills of lading, federal or state tax refunds, tort claims, premiums, deferred payments, refunds, retainage or retainage account in which the Indemnitors have an interest.

10. **Default**. Upon Default, Hartford shall have the absolute right to take any or all of the following actions:

    (a) Assert, enforce, and use all the assigned, transferred or conveyed rights;

    (b) Take possession of all or any part of the work under any or all contracts relating to or for which a Bond has been Underwritten;

    (c) Take possession of all tools, plant, machinery, equipment, office equipment, Books and Records, hardware, software, stored data, materials, supplies, inventory, work in process and completed assemblies, wherever located;

    (d) Execute any document in the name of any Indemnitor necessary to effectuate the purposes and terms of this Agreement or enforce any common law rights;

    (e) Take such other action and enforce such other rights permitted by this Agreement, at law or otherwise.

11. **Trust Fund**. If a Bond is Underwritten in connection with the performance of any contract, the entire contract price shall be dedicated to the satisfaction of the obligations of the Bond and this Agreement. All money paid or any securities, warrants, checks or evidences of debt given under contracts relating to or for which a Bond has been issued shall be impressed with a trust for the purpose of satisfying the obligations of the Bond Underwritten for said contract and this Agreement and shall be used for no other purpose until all such obligations have been fully satisfied.

12. **Attorney-In-Fact**. The Indemnitors irrevocably appoint and designate Hartford as their attorney-in-fact with the right, but not the obligation, to exercise all rights, create, execute and deliver any documents and take and perform all other actions deemed necessary by it to secure all rights provided by this Agreement or at law, including, without limitation, executing documents, stipulations and directives and endorsing securities, checks, drafts or like documents in the name of any Indemnitor. The Indemnitors ratify and confirm all actions taken or to be taken by Hartford as their attorney-in-fact. This power is coupled with an interest and shall survive the death or incapacity of any Indemnitor.

13. **Termination of Prospective Liability**. An Indemnitor's sole and exclusive means of terminating its prospective liability under this Agreement shall be through a written notice sent by overnight delivery, personal service, certified or registered mail to Hartford Fire Insurance Company, Bond Department, One Hartford Plaza, T-4, Hartford, CT 06155, Attn: Vice President, Bond. Said termination shall be effective on the later of the date set forth in the notice or 40 days after actual receipt of the notice by Hartford's designated recipient as set forth herein. Said termination shall not release the terminating Indemnitor from obligations under this Agreement for Bonds Underwritten prior to the effective date of termination or which arose prior to the effective date of termination nor shall it affect the continuing liability of any non-terminating Indemnitor.

14. **Joint, Several and Continuing Obligations**. The Indemnitors' obligations under this Agreement are joint, several and continuing. Hartford shall not be required to enforce or exhaust its rights or remedies against any one or more Indemnitors before asserting its rights against any other Indemnitors.

15. **Equitable Remedies**. The Indemnitors acknowledge and agree that their failure to immediately perform any obligation or requirement of this Agreement shall cause irreparable harm to Hartford for which there is no adequate remedy at law and the Indemnitors shall upon Hartford's demand stipulate, either directly or through the attorney-in-fact provision, that Hartford is entitled to all manner of equitable relief including, without limitation, specific performance and injunctive relief in addition to the relief otherwise afforded by this Agreement or at law.

16. **Representations**. The Indemnitors represent, warrant and agree that they have a substantial, material and beneficial interest in (a) Hartford Underwriting any Bonds; and (b) obtaining Bonds hereunder; and (c) each of the other Indemnitors obtaining Bonds hereunder; and (d) the transaction(s) for which they or any other Indemnitor has applied or will apply to Hartford for Bonds pursuant to this Agreement. The Indemnitors confirm their full power and authorization to execute, deliver and perform this Agreement. The Indemnitors further acknowledge and agree that their execution, delivery and performance of this Agreement shall not be in conflict with or result in a violation of any term, condition or provision of any charter documents, bylaws, operating agreements or similar formation or operational documents of such Indemnitors, or any law, rule, regulation, order, writ, injunction, judgment or decree of any court or governmental authority or any other agreement binding upon Indemnitors, nor shall it constitute a Default thereunder. Indemnitors confirm that there have been no verbal representations made to induce the Indemnitors to execute this Agreement and that each and every agreement, term, commitment, condition and waiver contained in this Agreement was knowingly, willingly and voluntarily made as an inducement to Hartford after a full and complete opportunity by Indemnitors to have the entirety of this Agreement reviewed carefully by legal counsel.

17. **Waiver.** In addition to other express waivers contained in this Agreement, the Indemnitors acknowledge and agree as follows:

    (a) **Waiver of Notice**. The Indemnitors expressly waive any right to be notified by Hartford of the fact or happening of any act, event, information or occurrence which has or may give rise to the possibility of Loss or promote the recovery of Loss under this Agreement, including, without limitation, Underwriting, cancelling, declining, nonrenewing, or modifying any Bonds, claims, demands, lawsuits, settlements, releases, loans, forbearances or other like acts, events or occurrences, it being expressly confirmed by the Indemnitors that lack of notice to an Indemnitor of any matter known to Hartford shall not be asserted as a defense to any claim by Hartford nor shall it form the basis of a demand against Hartford regardless of any defenses or objections which might have been asserted by Indemnitors to such actions. Additionally, the Indemnitors expressly waive any right to be notified by Hartford, that it (a) executed any Bond for any Indemnitor; (b) effected changes in Bonds or bonded contracts or the plans or specifications relating to them; (c) increased or decreased any Indemnitors obligations under this Agreement.

(b) **Waiver of Homestead/Property**. To the extent permitted by law, Indemnitors expressly waive, abandon and agree not to assert in any proceeding or action relating to any Bond or the enforcement of this Agreement, any statutory or common law claims or exemptions relating to Homestead and any claim that any property, whether Homestead or otherwise, is exempt from levy, execution, sale or other legal process under the laws of any State, Territory, Possession or Tribe.

(c) **Procedural Waivers**. In any proceeding or action relating to any Bond or the enforcement of this Agreement, Indemnitors, unless requested by Hartford to assert said rights, expressly waive, abandon and agree not to assert as a claim, defense or otherwise:

   (i) any right to a trial by jury; and

   (ii) any objection to venue, claim of forum non conveniens or any claim that the court in which the action or proceeding is brought lacks personal or subject matter jurisdiction; and

   (iii) any claim that the law applicable to any action or proceeding as determined by Hartford is improper or incorrect; and

   (iv) exhaustion of remedies.

18. **Choice of Law**. At the sole election of Hartford, this Agreement is to be governed by the laws of the State in which any Indemnitor resides or can be located or the site of any contract for which any Bond is Underwritten. Hartford's election hereunder shall be binding on the Indemnitors.

19. **Credit Reports**. Indemnitors hereby expressly authorize Hartford to access their credit reports at any time until all obligations of said Indemnitor have been fully discharged for any of the following purposes: (a) to verify information provided to Hartford; (b) for underwriting purposes; (c) to investigate claims or potential claims relating to the Underwriting of Bonds; (d) for debt collection; (e) for enforcement of this Agreement.

20. **Security Interest**. This Agreement constitutes a Security Agreement in favor of Hartford and also a Financing Statement enforceable in accordance with the provisions of the Uniform Commercial Code (UCC) now or hereafter in force in any jurisdiction. The Indemnitors hereby consent to Hartford perfecting its rights hereunder without providing notice. Hartford may make such additions to this Agreement as may be necessary or desirable to permit its filing as a Financing Statement under the UCC, and the Indemnitors shall, upon demand, immediately execute and deliver such further instruments as may be necessary or desirable to permit either the filing of this Agreement as a Financing Statement or the filing of a Financing Statement based upon this Agreement as a Security Agreement in such places as Hartford shall determine. A copy of this Agreement shall, if recorded, constitute a consensual lien upon any and all interest in real estate then owned, in whole or in part, by the Indemnitors.

21. **Non Waiver by Hartford**. Hartford's delay, forbearance, non-exercise or neglect in pursuing the enforcement of any provision, right or remedy afforded by this Agreement is not, and shall not be construed as, a waiver of any said provision, right or remedy nor shall it operate to prejudice the rights of Hartford to pursue any of said provisions, rights and remedies against any Indemnitor at any time.

22. **Severability**. If any provision of this Agreement is deemed invalid, all other provisions shall be construed and enforced with the same effect as if the invalid provision was omitted. Minor irregularities in the form of any signature or acknowledgment forming part of this Agreement shall not constitute a defense to the enforcement of this Agreement.

23. **Time is of the Essence**. Time is of the essence with respect to Indemnitors obligations under this Agreement.

24. **Counterparts**. This Agreement may be executed in any number of counterparts, each of which shall be an original but all of which together shall constitute one instrument. Each counterpart may consist of a number of copies hereof, each signed by less than all of the parties hereto.

25. **Headings**. Paragraph headings are inserted for convenience only and are not to be used to interpret the Agreement.

26. **Copies as Original**. An authenticated true and correct copy of this Agreement, however stored or reproduced, shall for all purposes be taken as an original.

27. **Additional Surety Documents**. The Indemnitors acknowledge and confirm that any of them may at any time enter into other and further written agreements or documents with or in favor of Hartford including, without limitation indemnity agreements, collateral agreements, loan agreements, subordination agreements, capital retention agreements, stock pledge agreements, deeds, notes, conveyances and other agreements and documents of like description ("Additional Surety Documents"). Indemnitors acknowledge and agree that this Agreement and any Additional Surety Documents are cumulative with, in addition to, not in lieu of and shall not be deemed to supersede, replace or compete with one another but shall in all respects be construed to be complimentary. Conflict or differences within and between the provisions of this Agreement and any Additional Surety Documents shall be interpreted, construed and resolved as broadly as possible in favor of Hartford.

28. **Amendments**. Any amendments, or modifications to this Agreement shall have no effect unless they are in writing and duly executed by an authorized employee of Hartford.

29. **Resolution**. Indemnitors have a substantial, material and beneficial interest: (a) in the obtaining of Bonds by any of the Indemnitors; and (b) in the transaction(s) for which any Indemnitor has applied or will apply to Company for Bonds pursuant to this Agreement. Indemnitors have the full power and authority to execute, deliver and perform this Agreement and to carry out the obligations stated herein. Indemnitors further acknowledge and agree that: (x) the execution, delivery and performance of this Agreement by such Indemnitors; (y) the compliance with the terms and provisions hereof; and (z) the carrying out of the obligations contemplated herein, do not, and will not, conflict with and will not result in a breach or violation of any terms, conditions or provisions of the charter documents or bylaws of such Indemnitors, or any law, governmental rule or regulation, or any applicable order, writ, injunction, judgment or decree of any court or governmental authority against Indemnitors, or any other agreement binding upon Indemnitors, or constitute a default thereunder.

30. **Special Provisions**.   **ADDENDUM TO GENERAL INDEMNITY AGREEMENT - Personal Indemnity Limitation.**

**The Indemnitors have read and understand this Agreement. Indemnitors acknowledge that not including signature pages this is a 9 page document containing 30 numbered paragraphs.**

Dated and effective this   **8th**   day of   **July**  , **2022**

Signature for General Indemnity Agreement – Corporate Indemnitor

Corporate indemnity signatures must be by corporate officers empowered to sign.  Attest signatures must be by the corporate secretary or member of the corporate indemnitor.  Each indemnitor signature must have a separate acknowledgment.

**SECRETARY/MEMBER:**

___*Mandy Grant*___
Mandy Grant, Secretary/Treasurer

**INDEMNITOR:**

Pro-Mark Services, Inc.

By: _____*/s/*_____(SEAL)
Chad DuBois, President

**ACKNOWLEDGMENT**

State of __NorthDakota__
County of __Cass__ } ss

On the __12th__ day of __July__, 20__22__, before me, __Kari Ann Hazer__, personally
(Name of Notary Public)
appeared **Chad DuBois, President of Pro-Mark Services, Inc.** [X] personally known to me –OR-- ☐ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

_____
Notary Registration Number

(SEAL)

_Kari Ann Hazer_
Notary Public (signature)

My commission expires the __3__ day of __28__, 20__24__

[Notary Seal: KARI ANN HAZER, NOTARY PUBLIC, STATE OF NORTH DAKOTA, MY COMMISSION EXPIRES 03/28/2024]

Case 24-30167   Doc 196-2   Filed 12/19/24   Entered 12/19/24 21:31:33   Desc
Exhibit A - GIA   Page 9 of 10

Signature for General Indemnity Agreement – Individual Indemnitor

Witness signatures must be by persons not a party to, or a relative to a party to, this Agreement. Each indemnitor signature must have a separate acknowledgment.

**WITNESS:**  **INDEMNITOR:**

Connie L. Berg

_Callie Croaker_   By: _Connie L Berg_ (SEAL)
Print Witness Name: Callie Croaker        Connie L. Berg, Individual

**ACKNOWLEDGMENT**

State of _North Dakota_
County of _Cass_ } ss
On the _13th_ day of _July_, 20_22_, before me, _Kari Ann Hazer_, personally
appeared                                    (Name of Notary Public)
**Connie L. Berg** [X] known to me –OR-- ☐ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Notary Registration Number _____
Notary Public (signature) _Kari Ann Hazer_
My commission expires the _28th_ day of _March_, 20_24_
(SEAL)

[Notary seal: KARI ANN HAZER, NOTARY, MY COMMISSION EXPIRES 03/28/2024, STATE OF NORTH DAKOTA]

---

Signature for General Indemnity Agreement – Individual Indemnitor

Witness signatures must be by persons not a party to, or a relative to a party to, this Agreement. Each indemnitor signature must have a separate acknowledgment.

**WITNESS:**  **INDEMNITOR:**

Kyle R. Berg

_Callie Croaker_   By: _K.R.B._ (SEAL)
Print Witness Name: Callie Croaker        Kyle R. Berg, Individual

**ACKNOWLEDGMENT**

State of _North Dakota_
County of _Cass_ } ss
On the _13th_ day of _July_, 20_22_, before me, _Kari Ann Hazer_, personally
appeared                                    (Name of Notary Public)
**Kyle R. Berg** [X] personally known to me –OR-- ☐ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Notary Registration Number _____
Notary Public (signature) _Kari Ann Hazer_
My commission expires the _28th_ day of _March_, 20_24_
(SEAL)

[Notary seal: KARI ANN HAZER, NOTARY, MY COMMISSION EXPIRES 03/28/2024, STATE OF NORTH DAKOTA]

General Indemnity Agreement                                                                 Page 9 of 9
PERF_GIA_L2010001-2018

## ADDENDUM TO GENERAL INDEMNITY AGREEMENT
### Personal Indemnity Limitation

It is understood and agreed that the General Indemnity Agreement executed by Pro-Mark Services, Inc., Connie L. Berg, and Kyle R. Berg (hereinafter individually and collectively **"Indemnitors"**) dated July 8th, 2022 (the "Pro-Mark Indemnity Agreement") and a separate General Indemnity Agreement executed by PMR Services, LLC, PMR Services II, LLC, Razor Consulting Solutions, Inc., Pro Mark Services, Inc., Carla D. Schwartzenberger, David S. Schwartzenberger, Eric J. Mauch, Jennifer J. Mauch, Connie L. Berg, and Kyle R. Berg (hereinafter individually and collectively **"Indemnitors"**) dated July 14th, 2020 (the "PMR Services Indemnity Agreement") for the benefit of Hartford Fire Insurance Company, Hartford Casualty Insurance Company, Hartford Accident and Indemnity Company, Hartford Underwriters Insurance Company, Twin City Fire Insurance Company, Hartford Insurance Company of Illinois, Hartford Insurance Company of the Midwest, Hartford Insurance Company of the Southeast and any of their insurance company affiliates, subsidiaries, parents, assigns, successors, divisions, co-sureties or reinsurers (individually and collectively **"Hartford"**) are modified as follows:

1. Hartford hereby agrees that the personal indemnity of Connie L. Berg and Kyle R. Berg jointly and severally for loss under the Pro-Mark Indemnity Agreement and the PMR Services Indemnity Agreement shall be and hereby is limited to an aggregate total of $3,000,000 and Hartford shall in no event assert or maintain any claim or legal proceeding against Connie L. Berg and Kyle R. Berg in excess of the amount herein limited.

2. Provided, however, the limitation on indemnity granted herein shall be null and void, thereby making Indemnitor's indemnity obligation unlimited, if Indemnitor and/or any of the Indemnitors (i) have materially misled Hartford in order to induce Hartford to execute Bonds under the Indemnity Agreement, and/or (ii) have transferred, conveyed or received any Indemnitor assets with the intent to avoid obligations or debts owed to Hartford or arising from any contracts.

3. Nothing in this Addendum shall otherwise affect the remaining obligations of Indemnitors and their subsidiaries and affiliates, it being expressly understood and agreed that this Addendum is in addition to, and not in lieu of, all other obligations under the Pro-Mark Indemnity Agreement, the PMR Services Indemnity Agreement or any other agreements. Unless specifically modified herein, all other terms and provisions of the Pro-Mark Indemnity Agreement, the PMR Services Indemnity Agreement or any other agreements between the parties hereto shall remain in full force and effect.

Executed this 8th day of July, 2022.

Witness: _Callie Croaker_   By: _Connie L. Berg_
Print Witness Name: Callie Croaker        Connie L. Berg

Witness: _Callie Croaker_   By: _[signature]_
Print Witness Name: Callie Croaker        Kyle R. Berg

**HARTFORD**

Witness: _____   By: _____
Print Witness Name: _____        Dan Dohse, Regional Bond Manager