UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| IN RE: | ) |
| | ) **Chapter 7** |
| Pro-Mark Services, Inc. | ) |
| | ) **Case No. 24-30167** |
| Debtor | ) |
| | ) |

**REPLY OF CREDITOR MIGUEL PAREDES
IN SUPPORT OF MOTION FOR AN ORDER
EXTENDING TIME TO FILE A PROOF OF CLAIM**

The Court should exercise its discretion to grant Mr. Paredes' Motion for Order Extending Time to File a Proof of Claim (Doc. 237) because the Trustee acknowledges that Mr. Paredes did not receive actual notice of the Bar Date even though the Trustee had knowledge of Mr. Paredes' prepetition engagement agreement with the Debtor giving rise to the claim long before the Bar Date and should have provided actual notice to Mr. Paredes. Moreover, the out of circuit cases he cites are unpersuasive because they did not arise from the same factual background as this matter and in any event were decided under the prior, and substantively different, version of Bankruptcy Rule 3007(c). No further analysis is required to grant Mr. Paredes' Motion.

Lack of notice aside, there are additional equitable considerations that support the relief Mr. Paredes seeks. The Court should reject the Trustee's argument that Mr. Paredes somehow received "constructive notice" based on events relating to the Court's Rule 2004 discovery order entered on August 20, 2024 (Doc. 100.) The Court's order notes that it received no objection to that motion, but Mr. Paredes did not have notice of it or the opportunity to object because the Trustee failed to serve the motion on either Mr. Paredes or his counsel. Although Mr. Paredes' counsel and the Trustee were negotiating a consensual, informal document production in the weeks prior to filing the Rule 2004 motion, and Mr. Paredes' counsel explicitly asked that all

communications be directed to them, the Trustee did not send them a service copy of the Rule 2004 motion or order. And no service was made upon Mr. Paredes, either—the Trustee sent a regular mail copy to the wrong address. Mr. Paredes and his counsel only became aware of the Rule 2004 order when the Trustee emailed counsel about accepting service of a subpoena in connection with the order, and this prompted counsel to make an appearance in the main bankruptcy case only days before the Bar Date to avoid being blindsided any further. The Trustee therefore omits facts that would particularly make denying the requested relief inequitable. These facts provide an additional and clear basis for granting Mr. Paredes the relief he seeks.[1]

## Argument

### A. The Trustee admits Mr. Paredes did not receive actual notice of the Bar Date.

1. "The Trustee does not dispute that Mr. Paredes was never formally served with notice of the September 3, 2024, bar date." (Doc. 243, Opp. Br., at ¶ 2.) Nor does the Trustee dispute that several courts, including bankruptcy courts in the Eighth Circuit, hold "that notice under Rule 3002(c)(7) means notice of the bar date, not notice of the bankruptcy case in general." (Opp. Br. at ¶ 2, quoting *In re JC Farms, LLC*, No. 23-10278-357, 2024 WL 3352120, at *4 (Bankr. E.D. Mo. July 9, 2024) (cleaned up).) This case law alone is sufficient to grant the Motion.

2. In *In re JC Farms,* the bankruptcy court convincingly explains the phrase "the notice" in Bankruptcy Rule 3002(c)(7) that survived amendments to Bankruptcy Rule 3002(c)(6) cannot "refer[] to anything other than notice of the bar date." *Id*. at *3-4. Nor is this view an outlier. *See e.g., In re Aguilar*, 668 B.R. 512, 515-16 (Bankr. S.D. Fla. 2025) ("the notice referred to in Rule 3002(c)(7) means the notice of the deadline to file a proof of claim and not notice in general of the bankruptcy case." (cleaned up)).

---

[1] This Reply applies to both the Trustee's Response in Opposition (Doc. 243) ("Opposition") and Capital Credit Union's Joinder in the Opposition (Doc. 244).

2

3. The other cases the Trustee cites from outside the Eighth Circuit are unpersuasive or inapposite. *In re Johnson,* No. 24-51353, 2025 WL 1920452, at *4-5 (Bankr. E.D. Mich. July 11, 2025), stands for the non-controversial point that a party seeking to object to a claim who did not file a proof of claim is not a "party in interest" with standing to prosecute the claim objection. *Id.* at *5. Also, unlike here, there was not a Bankruptcy Rule 3002(c)(7) motion before the court. The only reference to that rule was *dicta* whereby the bankruptcy court surmised that "*even if*" the objecting party would file a motion to extend the claims deadline, based upon the party's appearance in and actual notice of the bankruptcy case, it could not grant such a motion. *Id*. at *5 (emphasis in original). *In re Dillon*, 619 B.R. 357, 363 (Bankr. S.D. Miss. 2020) is likewise inapposite because it addressed former Bankruptcy Rule 3002(c)(6)(A), abrogated by Rule 3002(c)(7). Under the old Rule, the Court held that notice of the bankruptcy case was notice of the bar date, but that is no longer the law. *See id.*

4. Nor does *Wendover Fin. Servs. v. Hervey (In re Hervey)*, 252 B.R. 763, 766 (8th Cir. BAP 2000), a pre-Rule 3002(c)(7) case, support the Trustee for several reasons. First, that case did not discuss Bankruptcy Rule 3002(c)(7) or a predecessor Rule. This is no wonder because the issue before the Court was the propriety of the Bankruptcy Court's confirmation of a chapter 13 plan, and not whether a party should be permitted to file a claim after the bar date under Rule 3002(c)(7). The best the Trustee can muster is citation to a footnote where the Court referenced the creditor's comment at oral argument "intimat[ing] that it did not receive proper notice of debtor's bankruptcy filing." *Id*. at 767 n.5. The Court noted that, unlike here, the creditor's attorney was listed on the creditor matrix giving the creditor actual knowledge of the bankruptcy case, including sufficient notice of the bar date and other deadlines. *Id*. Here, Trustee did not identify

3

either Mr. Paredes or his counsel on a creditor matrix or any other document identifying creditors or claims.

### B. Equitable considerations also support the relief requested.

5. Moreover, an equitable component exists that bolsters the Court exercising its discretion to grant the relief requested in the Motion. The Trustee knew, long before he served creditors with the Notice to File Claims (Doc. 22, the "Notice"), that Mr. Paredes and the Debtor entered into a prepetition Engagement Agreement that included an indemnification right to Mr. Paredes that gives rise to a contingent, unliquidated prepetition claim. He should have therefore assured the Debtor's schedules reflected this contractual obligation and served Mr. Paredes with the Notice so Mr. Paredes could file a claim before the Bar Date. Inexplicably, the Trustee did not. (*See id.*) Moreover, the Court should take judicial notice that, based on the length and complexity of the complaint in the Adversary Proceeding (Adv. Proc. Case No. 24-07014), the Trustee began working on it long before the Bar Date and therefore knew (i) he was going to sue Mr. Paredes and (ii) thereby trigger the contractual indemnification provision in Mr. Paredes' Engagement Agreement giving rise to a claim. To be sure, the Trustee explicitly cited and quoted this very Engagement Agreement in his Adversary Complaint. (*See* Adv. Proc. Doc. 1, at ¶¶ 102-105.)

6. In addition, Section 704 of the Bankruptcy Code imposed upon the Trustee a number of duties, including investigating the Debtor's financial affairs. 11 U.S.C. § 704(a)(4). The Trustee certainly conducted enough of an investigation to enable him (i) to identify Mr. Paredes' prepetition Engagement Agreement, (ii) to seek an informal document production from Mr. Paredes, (iii) to file his Trustee's Motion to Authorize Rule 2004 Examinations (Doc. 62) ("2004 Motion"), and ultimately (iv) to bring the Adversary Proceeding, all prior to the Bar Date. Clearly the Trustee knew that Mr. Paredes held a contingent, unliquidated claim but failed in his duty to serve the Notice on Mr. Paredes.

4

7. All that aside, just having knowledge of the Engagement Agreement, the Trustee had knowledge of the prepetition indemnification obligation in it, and accordingly became aware that Mr. Paredes held a contingent, unliquidated claim against the Debtor's Estate. Despite this knowledge and having already provided other creditors with the Notice, for which the Trustee filed a Certificate of Service just weeks before engaging in communications with counsel for Mr. Paredes about his informal document requests, the Trustee did not cause the Notice to be served on Mr. Paredes (or eventually his counsel who the Trustee worked with on the informal requests). Nor did the Trustee move the Court for an order to amend the Debtor's schedules to add Mr. Paredes as a creditor, let alone to otherwise amend the schedules to identify purported claims against Mr. Paredes. *See* Bankruptcy Rule 1009(a)(2).

8. Mr. Paredes was not scheduled as a creditor and the Notice was never served on him. Not only was service of the Notice insufficient—it did not occur. For the avoidance of any doubt raised by the Trustee's Opposition, neither Mr. Paredes nor counsel for Mr. Paredes had actual knowledge of the Bar Date prior to the Bar Date. (Scheier Decl., ¶ 2.) Consequently, applying the appropriate standard under Bankruptcy Rule 3002(c)(7), Mr. Paredes is entitled to an extension of time to file a proof of claim against the Debtor's estate.

**C.  Counsel's appearance after learning of the Rule 2004 Order does not constitute notice of the Bar Date.**

9. The balance of the Trustee's Opposition turns the facts on their head and obfuscates what unfortunately now appears to be an attempted "gotcha" tactic. The notion that Mr. Paredes was substantially involved in this Bankruptcy Case before the Bar Date is false.

10. In June 2024, following the Trustee's efforts to contact Mr. Paredes directly, counsel for Mr. Paredes contacted the Trustee and his office to notify them that Mr. Paredes was represented and that all further communications should be directed to counsel. (Scheier Decl., ¶

5

3.) The Trustee's office then made informal document requests of Mr. Paredes, which were followed by discussions between counsel and the Trustee's office regarding the scope of those documents requests and related objections. (*Id.*, ¶ 4.) In July 2024, the Trustee's office sent more specific document requests, which were followed by additional attempts to negotiate the scope of the document requests. (*Id.*, ¶ 5.)

11. A month or so later on August 22, 2024, out of the blue and without any notice, the Trustee's office asked if Mr. Paredes would agree to accept service of a Rule 2004 document subpoena. (*Id.*, ¶ 6.) On that same date, counsel for Mr. Paredes advised the Trustee's office that this was the first time counsel for Mr. Paredes was aware that the Court ordered Rule 2004 discovery. (*Id.*, ¶ 7.) The Trustee had failed to serve Mr. Paredes' counsel, who had been working with the Trustee for a couple of months, with the Trustee's 2004 Motion. Instead, the Trustee attempted regular mail service of the 2004 Motion directly on Mr. Paredes despite the communications that had already occurred between counsel and the Trustee's office, and the directive from the outset that the Trustee's office direct all further communications to counsel. (*Id.*, ¶ 8.)

12. Yet, Mr. Paredes still did not receive service of the 2004 Motion. Put aside the fact that Trustee knew Mr. Paredes was represented and a request was made to serve counsel rather than Mr. Paredes, the Trustee attempted to serve the 2004 Motion on Mr. Paredes directly, but the address listed for Mr. Paredes in the 2004 Motion and Certificate of Service was incorrect. (*Id.*, ¶¶ 9-10.)

13. Counsel for Mr. Paredes raised significant concerns with respect to the propriety of service of the 2004 Motion and the Trustee agreed that the Trustee would take no further action while the Trustee considered responding to Mr. Paredes' outstanding objections to the prior

6

informal document requests and time for Mr. Paredes' to consider filing objections to the 2004 Motion now that he had notice of it. (*Id.*, ¶ 11.)

14. On August 23, 2024, the Trustee's office informed counsel for Mr. Paredes of their proposal to "first attempt to resolve any issues informally." Mr. Paredes' counsel agreed. The Trustee subsequently acknowledged that Mr. Paredes "did not have notice or an opportunity to be heard" with respect to the 2004 Motion. (*Id.*, ¶ 12.)

15. Now advised of the 2004 Motion and Order, and given the Trustee's disregard of counsel's prior directive that counsel for Mr. Paredes be sent all further communications, on August 26, 2024—only 8 days (5 business days due to the intervening Labor Day weekend) prior to the Bar Date—Mr. Scheier made an appearance as counsel for Mr. Paredes in the chapter 7 case (Doc. 110). (*Id.*, ¶ 13.) Despite counsel's understanding to work to resolve issues informally only three days prior, later on August 26, 2024, the Trustee commenced Adversary Proceeding Case No. 24-07014, asserting various claims against several defendants, including Mr. Paredes. (*Id.*, ¶ 14.)

16. Any overtures made to consensually resolve open objections to informal document requests, or the failure to provide notice or opportunity to be heard with respect to the 2004 Motion, simply proved hollow at that point, and what became readily apparent was that, unbeknownst to Mr. Paredes or his counsel, the Trustee had been working on his adversary complaint long before it was filed.

> **D.    The Court's discretion should not be used to award the Trustee with a "win" procured through dubious tactics.**

17. The fact that the Trustee's Adversary Proceeding would trigger the prepetition indemnification obligation in Paredes' Engagement Agreement was only known to the Trustee until it was commenced on August 26, 2024, the first day counsel for Mr. Paredes appeared in the

7

Bankruptcy Case out of an abundance of caution following the surprise discovery of the 2004 Motion and Order. Again, only 5 business days prior to the Bar Date. Given what had transpired between counsel and the Trustee's office just days before, not only did the filing of the Adversary Proceeding come as a surprise, but now unfortunately appears to have been a sandbagging tactic in light of the Trustee's attempt to make "gotcha" arguments with respect to Mr. Paredes' request for an extension of the Bar Date.

18. The Trustee's position that, despite actual notice of the Bar Date being the standard under Rule 3002(c)(7), the Court should still exercise discretion to deny Mr. Paredes' Motion is wholly inequitable. The Trustee conceded that Mr. Paredes did not have notice or an opportunity to be heard with respect to the 2004 Motion, but yet somehow now asks the Court to hold the pendency of the 2004 Motion against Mr. Paredes as evidence of his and his counsel's "substantial involvement in" this Bankruptcy Case and prohibiting extension of the Bar Date. Such an outcome cannot be squared with an appropriate exercise of the Bankruptcy Court's discretion as a court of equity. *See In re Racing Servs., Inc.*, 571 F.3d 729, 733 (8th Cir. 2009) ("Bankruptcy courts are courts of equity.") (Cleaned up.)

19. Moreover, extension of the Bar Date to allow Mr. Paredes to file a claim against the Debtor's Estate in conjunction with his Counterclaim, both arising from the same prepetition indemnification obligation the Trustee had long-known would be triggered by his Adversary Proceeding, is the only logical result and should have no impact on the bankruptcy proceedings. The District Court has denied the motion to withdraw the reference to the Bankruptcy Court and now the Court will preside over all pretrial proceedings in the Adversary Proceeding concerning Mr. Paredes' Counterclaim. (Adv. Proc. Doc. 161.) The parties have filed a discovery plan that contemplates the completion of all discovery in May 2027, with the case being trial-ready in early

2028. (Doc. 167.) All of which, to be clear, stems from the commencement of the Adversary Proceeding by the Trustee in the first instance. The Trustee has invited Mr. Paredes' Motion as much as he invited Mr. Paredes' Counterclaim, which will effectively litigate the validity of his proof of claim should the Court grant the Motion.

## Conclusion

The estate has a valid prepetition obligation to Mr. Paredes that is the subject of the Counterclaim against the Trustee, and both equity and the sanctity of contractual obligations require that should Mr. Paredes prevail, he have a means to enforce the contract against the Debtor's estate. Mr. Paredes requests that the Court enter an Order extending the time for him to file a proof of claim in this chapter 7 case pursuant to Bankruptcy Rule 3002(c)(7), and providing him 30 days from the entry of that Order to file the proof of claim.

Respectfully submitted,

/s/ Michael L. Scheier
Michael L. Scheier (*pro hac vice*)
Joseph E. Lehnert (*pro hac vice*)
KEATING MUETHING & KLEKAMP PLL
One East Fourth Street, Suite 1400
Cincinnati, Ohio 45202
Tel: (513) 579-6952
mscheier@kmklaw.com
jlehnert@kmklaw.com

*and*

/s/ Michael Gust
Michael Gust (ND #06468)
ABST LAW, P.C.
4132 30th Ave. SW, Suite 100
P.O. Box 10247
Fargo, ND 58106-0247
Tel: (701) 235-3300
mgust@abstlaw.net

*Attorneys for Miguel Paredes*

## CERTIFICATE OF SERVICE

I hereby certify that on September 12, 2025 a copy of the foregoing was served electronically through the Court's ECF System on all ECF participants registered in this case at the email address registered with the Court.

/s/ Jennifer A. Ernst
Jennifer A. Ernst