**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NORTH DAKOTA**

---

| | |
|---|---|
| In re: | Bankruptcy No. 24-30167 |
| Pro-Mark Services, Inc., | Chapter 7 |
| Debtor. | |

---

**SUPPLEMENT TO APPLICATION FOR APPROVAL OF EMPLOYMENT AND RETENTION OF CONSULTING EXPERT AND TESTIFYING EXPERT**

---

1. Applicant Erik A. Ahlgren is the Chapter 7 Trustee ("Trustee") in this case. The Applicant also serves as Administrator of the Pro-Mark Services, Inc. Employee Stock Ownership Plan and as Trustee of the Pro-Mark Services, Inc. Employee Stock Ownership Trust (together, the "ESOP").

2. On January 30, 2026, Applicant filed an application for approval of employment and retention of FTI Consulting, Inc. (ECF No. 272) (the "Application"). The Court approved the Application by order dated February 27, 2026 (the "Order") (ECF No. 281). All capitalized terms not defined here shall have the meanings given to them in the Application.

3. Applicant files this supplement to disclose a prior engagement between FTI and the Debtor (the "Supplement"), which Applicant only recently learned about.

4. Concurrently herewith, Applicant has filed a *Supplemental Declaration to Verified Statement Pursuant to Federal Rule 2014(a)* by Jack Schwager in support of this Supplement (the "Supplemental Declaration").

5. Applicant retained FTI to provide consulting and testifying expert witness services in connection with the Adversary Proceeding (the "Current Engagement"). Paragraph 9 of the Application states that FTI disclosed that it had no prior connections with the Debtor. Applicant has since learned that this disclosure, while made in good faith based on the information available at the time, did not account for the Pre-Petition Engagement (as defined below). As part of Applicant's review of records in connection with discovery in the Adversary Proceeding, Applicant learned that FTI and the Debtor had a pre-petition engagement (the "Pre-Petition Engagement"). A copy of the engagement letter for the Pre-Petition Engagement is attached as Exhibit A to the Supplemental Declaration.

6. The Pre-Petition Engagement began on September 19, 2022, and ended sometime in the fall of 2023. The Pre-Petition Engagement was limited to reviewing the Debtor's general ledger and payroll data and producing reports from these sources. The Debtor

used these reports to respond to inquiries made by the United States Department of Justice as part of its investigation into the Debtor. None of the FTI personnel who worked on the Pre-Petition Engagement are working on the Current Engagement. The Debtor paid all fees arising from the Pre-Petition Engagement in full prior to the petition date in this case, and no fees remain outstanding.

7. Applicant files this Supplement in the interest of full disclosure. Applicant submits that the Pre-Petition Engagement: (a) has no impact on the work that FTI is performing under the Current Engagement; and (b) has no effect on FTI's status as a disinterested person in this case as defined in 11 U.S.C. § 101(14).

8. Accordingly, Applicant believes that no further action by the Court is necessary and FTI's employment should continue under the terms previously approved by the Court in the Order.

Dated: August 28, 2026

/s/ Erik A Ahlgren
Erik A. Ahlgren, Trustee

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NORTH DAKOTA**

| | |
|---|---|
| In re: | Bankruptcy No. 24-30167 |
| Pro-Mark Services, Inc., | Chapter 7 |
| Debtor. | |

**SUPPLEMENTAL DECLARATION TO VERIFIED STATEMENT PURSUANT TO FEDERAL RULE 2014(a)**

I, Jack Schwager from FTI Consulting ("FTI") declare under penalty of perjury the following:

1. On January 30, 2026, Erik A. Ahlgren, as chapter 7 trustee in the above-captioned case (the "Trustee"), filed an application for approval of employment and retention of FTI Consulting, Inc. (the "Application") (ECF No. 272).

2. In support of the Application, I submitted a verified statement pursuant to Federal Rule of Bankruptcy Procedure 2014(a) (the "Verified Statement"). This declaration is submitted to supplement my Verified Statement, to disclose a prior, pre-petition engagement between FTI and the Debtor (the "Pre-Petition Engagement"). My initial Verified Statement inadvertently did not disclose the Pre-Petition Engagement, because I was not aware of such engagement.

3. Based on FTI's books and records and information provided to me by FTI's Conflicts Department, prior to the Debtor's bankruptcy filing, FTI performed services for the Debtor pursuant to an engagement letter, a true and correct copy of which is attached hereto as **Exhibit A**. It is my understanding that the (i) Pre-Petition Engagement was limited to reviewing the Debtor's general ledger and payroll data and producing reports from these data sources and (ii) Debtor used these reports to respond to inquiries made by the United States Department of Justice as part of its investigation into the Debtor. FTI's books and records indicate that the Pre-Petition Engagement concluded in the fall of 2023, the Debtor paid all fees arising from the Pre-Petition Engagement in full prior to the petition date in this case, and no fees remain outstanding.

4. The Pre-Petition Engagement is unrelated in scope and substance to that of FTI's retention in this case. FTI has implemented an ethical wall to ensure that none of the FTI personnel who worked on the Prior Engagement are working on the current engagement.

5. Except as disclosed in this declaration, FTI has no other connections with the Debtor, or its attorneys or accountants, that would affect its disinterestedness or otherwise require disclosure under Federal Rule of Bankruptcy Procedure 2014(a).

Jack Schwager, FTI Consulting, Inc.

Dated: August 26, 2026

By: ______________________________

# Exhibit A

## Prior Engagement Letter

FTI CONSULTING

19 September 2022

Rachel Peck
Counsel
Steptoe & Johnson LLP
1300 Connecticut Avenue NW
Washington, DC 20036

Chad DuBois
President
Pro-Mark Services, Inc.
3275 Oak Ridge Loop E.
West Fargo, ND 58078

**Re: DOJ Subpoena – Data Analysis**
FTI Reference Number: _____________

Dear Rachel and Chad:

This letter will confirm the retention of FTI Consulting, Inc. ("FTI") by Steptoe & Johnson LLP ("Counsel"), in connection with its representation of Pro-Mark Services, Inc. ("Client") in the above referenced matter (the "Engagement"). FTI will work under the direction of Counsel in this matter.

FTI will work with Counsel to assist in the access and acquisition of data contained in the QuickBooks application maintained by Client. Thereafter, and at the direction of Counsel, we will focus on the General Ledger ("GL") and Payroll data contained in QuickBooks. Counsel may ask us to analyze specific project-based data contained in QuickBooks, as well. FTI will review, assess and validate the data, if necessary, and will share our findings with Counsel.

All professional conclusions will be those of the FTI professionals working on this matter. Counsel and the Client will make available to FTI all data and documents necessary for FTI to complete the analysis. Should FTI determine that additional data and/or documents are necessary, FTI will make all requests for such records through Counsel.

I will maintain overall administrative responsibility for the Engagement, including billing and client relations. I will be actively involved in the performance of the Engagement and will use such other staff for assistance as deemed necessary. FTI's work will be billed at discounted hourly rates applied to productive hours engaged in providing service and out-of-pocket expenses. Hourly rates are based upon the experience and skills of the personnel involved.

The current forensic hourly rates by professional level are the following ranges:

| | |
|---|---|
| Senior Managing Director / Managing Director | $675 - $815 |
| Senior Director | $630 - $680 |
| Director | $525 - $645 |
| Senior Consultant | $410 - $515 |
| Consultant | $315 - $400 |
| Project Assistant | $295 |

FTI understands that Client will be solely responsible for payment of its fees and expenses. FTI will submit invoices for its fees and expenses incurred in connection with this Engagement to Counsel, who will invoice Client. Counsel will notify FTI when it submits our invoice to Client for awareness. All work performed by FTI on this project will be conducted at the direction of and under supervision of Counsel. FTI has been retained for the purposes of assisting Counsel in Counsel's rendering of legal advice to Client. Moreover, Counsel does not intend or agree to waive the attorney-client privilege with respect to any electronic data or other information or documents provided to FTI in connection with the Services. As such, all communications and documents exchanged between FTI and Counsel shall be protected by the attorney-client privilege and work product doctrine.

A copy of FTI's standard terms and conditions, which Counsel and Client accept and hereby agree to, is attached, and together with this letter of engagement, constitute the "Engagement Contract."

Counsel and the Client acknowledge their respective agreement with this Engagement Contract as evidenced by their signatures below. In the event only Counsel is executing on behalf of its Client, Counsel represents and warrants that Client has been notified of the terms of this Engagement Contract, agrees to be bound hereby and has authorized Counsel to enter into this Engagement Contract on Client's behalf. Please return to FTI the signed copy of this Engagement Contract. FTI will not be able to begin work until it has received an executed Engagement Contract. If this Engagement Contract is not executed by Counsel and/or Client and returned to FTI within ten days of the date of this letter, the offer to provide services is revoked and this Engagement Contract shall be deemed null and void.

Very truly yours,
FTI CONSULTING, INC.

By: ______________________________

David Turner
Senior Managing Director
David.Turner@fticonsulting.com



FTI CONSULTING

Accepted by: Steptoe & Johnson LLP

By: [signature]

Print Name: Rachel Peck

Title: Of Counsel

Date: 9/19/2022

Email: rpeck@steptoe.com

Accepted by: Pro-Mark Services Inc.

By: Chad DuBois

Print Name: Chad DuBois

Title: President

Date: 9/19/22

Email: chad@gopromark.com

Name and Address of person designated to receive and approve invoices related to this Engagement:

Name: Chad DuBois

Address: 3275 Oak Ridge loop E
West Fargo, ND 58078

Phone: 701-412-3147

Email: chad@gopromark.com



FTI CONSULTING

**FTI STANDARD TERMS AND CONDITIONS**

FTI's rates are subject to adjustment from time to time and at least annually effective October 1, 2023. FTI will advise Client and Counsel immediately if a rate adjustment is being made. Further, if any work needs to be performed by FTI personnel in our international offices, such work will be billed at the rates set forth for the specific international office.

FTI will bill for reimbursement of reasonable and customary out-of-pocket expenses that are directly incurred on the Engagement, such as messenger, travel, meals, accommodations, computing resources, and other expenses specifically related to the Engagement. FTI will also bill 6.0% of FTI's professional fees as a reasonable allocation of non-direct expenses such as administrative support and other overhead expenses that are not billed as direct reimbursable expenses. Further, if FTI and/or any of its employees are required to testify or provide evidence at or in connection with any judicial or administrative proceeding relating to this Engagement to which FTI is not a party, Counsel will compensate FTI at its discounted hourly rates and reimburse FTI for reasonable direct and allocated expenses (including counsel fees) with respect thereto.

All payments will be due 60 days after receipt of the invoice. For your information and use, FTI's Taxpayer Identification Number is 52-1261113. In the event Client disputes any of the fees or expenses on a specific invoice, the Counsel shall notify FTI within sixty (60) days of receipt of the invoice of such a dispute. If Client fails to notify FTI within the sixty (60) day period, the Client shall have waived its right to dispute such invoice.

Without limiting FTI's other rights and remedies, in the event any payment is not paid by Counsel within ninety (90) days of the date of invoice, then interest shall accrue, from the ninety-first (91st) day until payment in full is received, at the rate of one and one half (1 ½ %) percent per month. Nothing herein shall be construed as extending the due date of payments to be made by Counsel under this Agreement. In addition to any other remedies set forth above, and any other remedies available at law, FTI reserves the right to halt further services until payment is received on past-due invoices. It is FTI's normal practice to be paid in full for all work performed to date prior to issuance of a report, deposition testimony and/or trial testimony. Client agrees to pay all court costs, attorney fees (whether or not contingent on collection from Client) and other expenses which may be associated with the collection of unpaid invoices.

FTI's fees and expenses are not contingent upon the final results, nor does it guarantee any result or resolution in connection with this Engagement. FTI will meet with Counsel regularly to discuss the ongoing work and associated fees and FTI will rely on Counsel to communicate these items to the Client.

FTI is a global firm and, through its practice groups and affiliated entities, provides a variety of services to third parties on a non-exclusive basis including by way of example and not limitation, Forensic and Litigation Consulting, Technology Services, Corporate Finance/Restructuring, Economic Consulting and Strategic Communications. Other professionals of FTI may be engaged by parties with interests that are adverse to and may not be consistent with the interests of Counsel and Client. During the pendency of this Engagement, the FTI professionals providing services hereunder will not provide services in this matter to a party that is adverse to Client.

The parties hereto agree that any confidential information received from the other party shall only be used for the purposes of providing or receiving Services under this Engagement Contract. Except as provided below, neither party will disclose the other party's confidential information to any third party without the other party's consent. FTI understands that the confidential information, as well as its work product and files may become subject to discovery; however, until such materials are sought by subpoena or other process, they will be maintained by FTI as confidential. It is agreed that those materials and all other working papers and other documents prepared by FTI pursuant to this Engagement will be maintained as confidential materials and will not be disclosed to third parties without Counsel's consent, except as may be required by law, regulation, or judicial or administrative process. Unless prohibited by law, FTI agrees to notify Counsel promptly of any of the following events: (a) a request by anyone to examine, inspect, or copy such documents or records; or (b) any attempt to serve, or the actual service of, any court order, subpoena, or summons upon FTI that requires the production of such documents or records. Confidential information shall not include information that is or becomes generally available to the public other than as a result of a breach of a non-disclosure obligation hereunder, is acquired from a third party who, to the recipient party's knowledge, owes no obligation of confidence in respect of the information, or is or has been independently developed by the recipient.

Any advice given or report issued by FTI is provided solely for your use and benefit and only in connection with the purpose in respect of which the Services are provided. Unless required by law, neither Counsel nor Client shall provide any advice given or report issued by FTI to any third party, or refer to FTI or the Services, without FTI's prior written consent, which shall be conditioned on the execution of a third party release letter in the form provided by FTI. In no event, regardless of whether consent has been provided, shall FTI assume any responsibility to any third party to which any advice or report is disclosed or otherwise made available.

While FTI's work may include an analysis of financial and accounting data, the Services will not include an audit, compilation or review of any kind of any financial statements or components thereof. Client management will be responsible for any and all financial information they provide to FTI during the course of this Engagement, and FTI will not examine or compile or verify any such financial information. Moreover, the circumstances of the Engagement may cause FTI's advice to be limited in certain respects based upon, among other matters, the extent of sufficient and available data and the opportunity for supporting investigations in the time period. Accordingly, as part of this Engagement, FTI will not express any opinion or other form of assurance on financial statements of the Client.

In the event the Services involve prospective financial information, FTI's work will not constitute an examination or compilation, or apply agreed-upon procedures, in accordance with standards established by the American Institute of Certified Public Accountants or otherwise, and FTI will express no assurance of any kind on such information. There will usually be differences between estimated and actual results, because events and circumstances frequently do not occur as expected, and those differences may be material. FTI will take no responsibility for the achievability of results or events projected or anticipated by the management of the Client.

The Client shall notify FTI in writing if Client delivers to FTI any personally identifiable information or equivalent and the Client shall instruct FTI if any additional measures (i.e. data transfer protections) are required. Upon written notice to the Client, FTI will, at its option, destroy or return to the Client all original materials provided by the Client and/or Counsel to FTI, and all materials created by FTI specifically for the

Client as a result of an engagement; provided, however, that with respect to back-up media, such materials will be overwritten or destroyed, subject to FTI's normal schedule for overwriting and destruction, as the case may be.

If this engagement involves the processing of personal data (also referred to herein as personal information) (i) as governed by Regulation (EU) 2016/679 of the European Parliament and of the Council of 27 April 2016, the terms of the EU Data Protection Schedule attached hereto as Schedule A shall apply to this engagement and it shall form an integral part of this Agreement and (ii) as governed by the California Consumer Privacy Act, the terms of the California Data Protection Schedule attached hereto as Schedule B shall apply to this engagement and it shall form an integral part of this Agreement. In the event of a conflict between the terms of this Agreement and the terms of Schedule A or Schedule B, the terms of Schedule A or Schedule B shall prevail in relation to the processing of such personal data. If such personal data is processed in connection with this engagement, Client shall notify FTI in writing before any personal data is disclosed to FTI.

Client and Counsel agree that FTI shall not be liable under this Engagement Contract to the Client, Counsel, or their respective successors, assigns or affiliates for damages in excess of the total amount of the fees paid to FTI under this Engagement Contract. In no event shall FTI be liable for punitive or consequential damages of any kind. The Client shall indemnify FTI, and hold FTI harmless against any and all claims by third parties for losses, damages or liabilities, including reasonable attorneys' fees and expenses ("Losses"), arising in any manner out of or in connection with this Engagement, unless it is finally judicially determined that such Losses resulted from the gross negligence or willful misconduct of FTI. The terms of this paragraph shall survive the termination of this Engagement Contract and shall apply to any controlling person, director, officer, employee or affiliate of FTI.

The Client agrees to promptly notify FTI if it extends (or solicits the possible interest in receiving) an offer of employment to a principal or employee of FTI involved in this Engagement and agrees that it will pay FTI a cash fee, upon hiring, equal to 150% of the aggregate current annualized compensation (both cash and non cash consideration), including any guaranteed or target bonus, to be paid to FTI's former principal or employee that the Client or any of its subsidiaries or affiliates hires at any time up to one year subsequent to the date of the final invoice rendered by FTI with respect to this Engagement.

The Engagement Contract shall be governed by and interpreted in accordance with the laws of the State of New York, without giving effect to the choice of law provisions thereof.

The United States District Court for the Southern District of New York and the appropriate Courts of the State of New York sitting in the Borough of Manhattan, New York City, shall have exclusive jurisdiction in relation to any claim, dispute or difference concerning the Engagement and any matter arising from it. The parties submit to the jurisdiction of such Courts and irrevocably waive any right they may have to object to any action being brought in these Courts, to claim that the action has been brought in an inconvenient forum or to claim that those Courts do not have jurisdiction. In the event that differences concerning the services or other matters arising hereunder should arise that are not resolved by mutual agreement, to facilitate judicial resolution and save time and expense, Counsel, the Client and FTI irrevocably and unconditionally agree to waive a trial by jury in any action, proceeding or counterclaim arising out of or relating to the Engagement Contract.

The Client agrees that it will comply with all anti-corruption, anti-money laundering, anti-bribery and other economic sanctions laws and regulations of the United States, United Kingdom, European Union and United Nations (collectively, the "ABC/AML/Sanction Laws") in connection with this Engagement. The Client further agrees that it shall not, and it shall procure its employees not to, pay or cause other person(s) to pay FTI using any funds that would result in a violation of any of the ABC/AML/Sanction Laws by either Client or FTI, or otherwise take any action that would result in a violation of any of the ABC/AML/Sanction Laws by either Client or FTI. The Client shall promptly notify FTI in the event of any violation or failure to comply with ABC/AML/Sanction Laws in connection with this Engagement, or allegations relating thereto, by the Client or its directors, officers, employees or agents.

**SCHEDULE A**
**FTI CONSULTING DATA PROTECTION SCHEDULE**

This Data Protection Schedule ("**Schedule**") forms part of the contract for services to which it is an attachment (the "**Contract**") between the client party identified in the Contract (the "**Client**") and the relevant FTI Consulting group entity identified in the Contract ("**FTI**").

**1. Definitions**

1.1 In this Schedule, unless otherwise defined herein, all defined terms shall have the meaning set out in the Contract.

1.2 In this Schedule, the following terms shall have the meanings set out below:

1.2.1 "**Data Protection Laws**" means all legislation protecting the personal data of natural persons that is applicable to the processing of Personal Data under this Schedule, including (without limitation) the GDPR and any national legislation which supplements the GDPR, and the data protection laws of any other country, state or territory which apply to such processing***;***

1.2.2 **"EEA Standard Contractual Clauses"** means the Standard Contractual Clauses set out in the European Implementing Decision (EU) 2021/914 on standard contractual clauses for the transfer of personal data to third countries pursuant to Regulation (EU) 2016/679, as updated, amended, replaced or superseded from time to time by the European Commission;

1.2.3 "**GDPR**" means the General Data Protection Regulation (EU) 2016/679;

1.2.4 **"Restricted Transfer"** means a transfer of Personal Data from Client to FTI in circumstances where such transfer would be prohibited by Data Protection Laws in the absence of the EEA or UK Standard Contractual Clauses;

1.2.5 **"Standard Contractual Clauses"** means either the EEA or UK Standard Contractual Clauses, as applicable to a Restricted Transfer;

1.2.6 **"UK Standard Contractual Clauses"** means the standard contractual clauses for the transfer of personal data to Processors established in third countries which do not ensure an adequate level of protection as set out in Commission Decision 2010/87/EU, as updated, amended, replaced or superseded from time to time by the UK government; "**UK GDPR**" means the GDPR as transposed into United Kingdom national law by operation of section 3 of the European Union (Withdrawal) Act 2018 and as amended by the Data Protection, Privacy and Electronic Communications (Amendments etc.) (EU Exit) Regulations 2019; and

1.2.7 "**Personal Data**", "**Process**", "**Controller**", "**Processor**", "**Data Subject**", "**Supervisory Authority**" and "**Personal Data Breach**" shall have the meanings given to them in the Data Protection Laws.

**2. Controller Terms**

2.1 FTI and the Client will each act as separate and individual Controllers in relation to any Personal Data (including, without limitation, Personal Data relating to any of the Client's workers, FTI's workers, any litigation or arbitration opponent or customer or vendor or transaction partner) Processed by the Client or FTI to deliver the services set out under the Contract.

2.2 FTI and the Client will each comply with its own respective obligations under the Data Protection Laws in relation to their Processing of Personal Data under the Contract. In particular, the Client will ensure that any disclosures of Personal Data to FTI are lawful, and, in each case where necessary under the Data Protection Laws, the Client has notified and secured the consent of the relevant Data Subjects.

2.3 FTI may appoint Processors as required to deliver the services, who will process the Personal Data on FTI's behalf and at FTI's direction. Further, FTI may disclose Personal Data to other Controllers:

2.3.1 where necessary to deliver the services (including, but without limitation, law firms, accountants, other third party experts and any member of FTI's group of companies); or

2.3.2 pursuant to a legally binding written request, an order or request of a court of competent jurisdiction or any governmental or regulatory authority or where disclosure is required by applicable law or regulation ("**Legal Process"**). In relation to any Legal Process, FTI shall assess the lawfulness of the request before responding, and shall take any steps required by Data Protection Laws to protect Personal Data prior to its disclosure (including, without limitation, with respect to data minimization and data security);

2.4 In respect of any Restricted Transfer subject to the GDPR, the parties hereby enter into Module 1 of the EEA Standard Contractual Clauses (with Client as data exporter and FTI as data importer), which is hereby incorporated by reference into this Schedule and which shall come into effect upon the commencement of a Restricted Transfer. The parties make the following selections for the purposes of Module 1:

2.4.1 Clause 7 – *Docking clause* shall apply;

2.4.2 Clause 11(a) – *Redress* the optional language shall not apply;

2.4.3 Clause 13(a) – *Supervision*

2.4.3.1 Where Client is established in an EU Member State, the following shall apply: "The supervisory authority with responsibility for ensuring compliance by the data exporter with Regulation (EU) 2016/679 as

regards the data transfer shall be the supervisory authority of the Member State in which Client is established or (if different) the lead supervisory authority of the Client in respect of a cross-border processing activity". *OR*

2.4.3.2 Where Client is not established in an EU Member State, but falls within the territorial scope of application of the GDPR in accordance with Article 3(2) and has appointed a representative pursuant to Article 27(1) of the GDPR the following shall apply: "*The supervisory authority of the Member State in which the representative within the meaning of Article 27(1) of Regulation (EU) 2016/679 is established, shall act as competent supervisory authority*." *OR*

2.4.3.3 Where Client is not established in an EU Member State, but falls within the territorial scope of application of the GDPR in accordance with Article 3(2) without however having to appoint a representative the following shall apply: "*The supervisory authority of one of the Member States in which the data subjects whose personal data is transferred under these Clauses in relation to the offering of goods or services to them, or whose behaviour is monitored, are located, as indicated in Annex I.C, shall act as competent supervisory authority*."

2.4.4 Clause 17 – *Governing law* "Option 1" shall apply and the "Member State" shall be the Republic of Ireland;

2.4.5 Clause 18 – *Choice of forum and jurisdiction* the Member State shall be the Republic of Ireland;

2.4.6 Annex 1 – the data exporter is Client and the data importer is FTI (in each case as identified, including in relation to their places of establishment, in the Principal Agreement) and the description of transfer is deemed to be as described in Annex 1 to this Schedule;

2.4.7 Annex 2 – the technical and organizational security measures are deemed to be as described in Annex 2 to this Schedule; and

2.4.8 Annex 3 – not applicable.

2.5 In respect of any Restricted Transfer subject to the UK GDPR, the parties hereby enter into the UK Standard Contractual Clauses (with Client as data exporter and FTI as data importer), which are incorporated by reference into this Schedule and which shall come into effect upon the commencement of a Restricted Transfer. For the purposes of clause II h) of the UK Standard Contractual Clauses, the Parties shall be deemed to have selected option (iii). Annex 2 to the UK Standard Contractual Clauses shall be deemed to be prepopulated with the relevant sections of the Annex to this Schedule. If at any time the UK government approves the EEA Standard Contractual Clauses for use under the UK GDPR, the provisions of paragraph 2.4 shall apply in place of this paragraph 2.5 in respect of Restricted Transfers subject to the UK GDPR, subject to

any modifications to the EEA Standard Contractual Clauses required by the UK GDPR (and subject to the governing law of the EEA Standard Contractual Clauses being English law).

2.6 The Client acknowledges and agrees that certain Processors or Controllers engaged by FTI under paragraph 2.3 may be located in places that may require cross-border transfers of Personal Data. In respect of transfers by FTI to such Controllers or Processors, FTI will take steps in accordance with the Data Protection Laws to ensure an adequate level of protection for the Personal Data Processed by such Processors or Controllers. Where such a Controller or Processor notifies FTI that it may no longer be able to provide an adequate level of protection in accordance with Data Protection Laws, FTI shall independently assess the level of protection provided and, where necessary, shall take mitigating steps to improve the level of protection or, where this is not possible, terminate the transfer.

2.7 The Client acknowledges that FTI's email records are replicated onto a Microsoft 365 Cloud system in the United States of America and the Client hereby consents that any Personal Data that is provided to FTI by email will be replicated accordingly. To the extent that the Client wishes to transmit certain information or data to FTI and the Client objects to that data being replicated in accordance with this paragraph, the Client will use a communication or transmission method other than e-mail or will use an alternative e-mail system.

**SCHEDULE B**

**FTI CONSULTING CALIFORNIA DATA PROTECTION SCHEDULE**

This California Data Protection Schedule ("**Schedule**") forms part of the contract for services to which it is an attachment (the "**Contract**") between the client party identified in the Contract (the "**Client**") and the relevant FTI Consulting group entity identified in the Contract ("**FTI**"). FTI will be functioning as a service provider.

1. **Processing of Personal Information.**

In connection with FTI's provision of services to Client under the Contract, if FTI receives any personal information (as such term is defined under the California Consumer Privacy Act) from or on behalf of Customer, then FTI:

a) Will only process such personal information for the purpose of providing the services;

b) Will not retain, use, or disclose such personal information for any purpose other than to perform the services or outside of the direct business relationship between FTI and Client;

c) Will not sell, rent, release, disclose, disseminate, make available, transfer or otherwise communicate such personal information to any third party for monetary or other valuable consideration; and

d) Certifies that it understands the restrictions on its processing of such personal information as set forth in this sentence and will comply with them.

FTI may disclose personal information to FTI's service providers in connection with such service providers providing services to FTI, and FTI may permit such service providers to process personal information as necessary for FTI to provide the services to Client.

**Annex 1: Description of Personal Data Processing**

This Annex includes certain details of the Processing of Personal Data by FTI under the Principal Agreement.

**1. Subject matter and duration of the Processing of the Personal Data**

The subject matter and duration of the Processing of the Personal Data are set out in the Principal Agreement and this Schedule.

**2. The nature and purpose of the Processing of the Personal Data**

FTI is engaged to provide Services to Client which involve the Processing of Personal Data. The scope of the Services is set out in the Principal Agreement, and the Client Personal Data will be Processed by FTI for purposes determined by it, in connection with the delivery of those Services and compliance with the terms of the Principal Agreement, including this Addendum, as well as applicable laws.

**3. The types of the Personal Data to be Processed**

Client customer or employee information which may be collected in the course of delivering consulting and advisory services to Client, including name, title, gender, personal contact details (address, telephone number, email address), work address, work email, work telephone numbers, job title, and other types of Personal Data supplied by the Client to FTI pursuant to the Principal Agreement.

**4. The categories of Data Subject to whom the Personal Data relates**

The categories of Data Subjects are determined by the nature of the client engagement, the details of which are covered in the Principal Agreement.

**5. The obligations and rights of Client**

The obligations and rights of Client are set out in the Principal Agreement and this Schedule.

**6. Frequency of Restricted Transfers (where applicable):**

As necessary to deliver Services for the duration of the Principal Agreement.

**7. The period for which Personal Data subject to Restricted Transfers will be retained (where applicable):**

In accordance with FTI's data retention policies, copies of which are available upon request.

## Annex 2: Technical and Organizational Security Measures

FTI Consulting maintains the following technical and organizational security measures when processing Personal Data for its clients.

**Measures of pseudonymisation and encryption of personal data**

When data at rest leaves our direct control (such as backup tapes, removable hard drives, etc.) the data is encrypted using AES 256-bit encryption. All laptops utilize full disk encryption. Data that is in transit over public circuits is encrypted in transit using SSL. FTI Consulting additionally deploys firewalls throughout its networks to allow and deny specific network traffic using key indicators such as source/destination address, source/destination port, etc.

**Measures for ensuring ongoing confidentiality, integrity, availability and resilience of processing systems and services Measures for ensuring the ability to restore the availability and access to personal data in a timely manner in the event of a physical or technical incident**

FTI requires new employees/contractors to acknowledge receipt of the following policies including: Code of Ethics and Business Conduct, Anti-Corruption Policy, Acceptable Use of Technology Resources, Confidentiality Agreement, Employee Handbook Policy on Inside Information & Insider Trading, and Time Recording Policy.

FTI Consulting has a documented policy for business continuity and disaster recovery that has been approved by management, communicated properly and is maintained and reviewed. The general details are reflected in the FTI Consulting Information Security Policy. The recovery point objective exceeds 4 hours and the recovery time objective exceeds 24 hours. The specific tools used for backups vary by region.

**Processes for regularly testing, assessing, and evaluating the effectiveness of technical and organisational measures in order to ensure the security of the processing**

FTI has access to all major vendor security bulletins and have controls over identifying, scheduling, testing, and deploying patches. The deployment time is 14 days for high and within 24 hours for critical/emergency patches.

FTI has controls over identification of vulnerabilities, risk ranking, reporting, and remediation. This includes perimeter vulnerability scans that must be performed at least quarterly and semi-annual internal vulnerability scans that cover workstations, servers, and network devices.

FTI performs internal penetration test to identify flaws in the internal security controls that could allow an attacker to surreptitiously gain access to sensitive data and/or disrupt critical business systems. The organization must also perform external network penetration test to identify potential vulnerabilities which could be exploited to gain access to systems and data or to establish a foothold into internal network from which to launch further attacks.

FT’s cybersecurity team tracks the resolution of vulnerabilities. Vulnerabilities that are not resolved as part of patching cycles must be tracked on a vulnerability log or similar mechanism.

**Measures for user identification and authorization**

FTI uses unique IDs and if generic IDs should be disabled unless there is an approved security exception. FTI users authenticate through Active Directory (AD), SSO used when possible, and remote connection requires two factor authentication and leverages FTI's Corporate DUO two factor technology. Duo Security generates passcodes (similar to a PIN Code) to mobile devices for login and can receive push notifications for easy updates. Duo Security is integrated with OneLogin (our SSO platform) providing a unified authentication solution.

Privileged and remote access must include multi-factor authentication and secure mechanisms (e.g., TACACs+, RADIUS) must be used on all network devices.

FTI password complexity (i.e., characters, length), lockout settings, expiration settings meet the following requirements:

- Contain both upper and lower case characters (e.g., a-z, A-Z);
- Have digits and punctuation characters as well as letters e.g., 0-9,!@#$%^&*()_+|~-=\`{}[]:”;‘<>?,./);
- Contains at least 12 characters for standard accounts and 15 characters in length for admin accounts;
- Must be changed at least every 90 days;
- Are not words in any language, slang, dialect, jargon, etc.;
- Are not based on Confidential Information, names of family, etc.;
- User accounts are locked after 10 unsuccessful logins. Account lockout for 30 minutes. Reset after 30 minutes;
- Password history - 24 passwords remembered;
- Passwords are stored protected in an encrypted format.

**Measures for the protection of data during transmission and measures for the protection of data during storage**

FTI has Data Loss Prevention (DLP) and extrusion prevention tools that restrict sending sensitive data over unsecure mail. Anomalies that exceed the normal traffic patterns are noted and appropriate action is taken to address them.

FTI protects data in transmission which include the following acceptable methods:

- Email: Transport Layer Security (“TLS”) Internet protocol, which provides security for all email transmissions over the public Internet may be setup with using opportunistic or mandatory TLS connections. Only TLS 1.2 or TLS 1.3 is acceptable.
- "Mailbox to mailbox" encryption that secures email messages and electronic files (using 256-bit AES encryption).

- Secure FTP: FTP utilizes TLS or SSH to allow us to share data with clients securely over the Internet. Only TLS 1.2 or TLS 1.3 is acceptable.
- External Encrypted Drive: Must use FIPS 140-2/AES 256-bit encryption or stronger.
- File Stores: Matter/Engagement related files stored centrally on the network are secured so that only those explicitly authorized can access the files.

FTI stores data in an environment that is not internet facing and segregated from the demilitarized zone by a firewall. The data must be logically segregated from other client or corporate data. Different tools may be employed depending upon the nature and/or location of the work.

**Measures for ensuring physical security of locations at which personal data are processed**

Specific physical security provisions vary depending on office location, however, as per the Information Security policy, access to company premises, including delivery and loading areas, must require badge access. Badge access is managed by local facilities or ITG, who use a badge kiosk to produce access badges. All badge issuances and updates require management approval.

**Measures for ensuring events logging**

FTI logs activity which is stored for 7 years. Data is logged at sufficient level (i.e., user ID, activity) and logging is enabled for the entire environment. The logging must provide relevant information (i.e., authorized & unauthorized attempts, remote access). System event and audit logs should capture the following events as applicable:

- Authentication failures;
- Software or service failures;
- Logon and use of privileged IDs;
- Database changes;
- Adding/deleting users;
- Password Changes;
- Adding/deleting groups and/or users associated with groups;
- Changing audit log configuration or disabling audit subsystem.

FTI uses SecureWorks which provides a Security Incident and Event Management (SIEM). The foundation of the SIEM includes Red Cloak endpoint event logs analysis, which includes an industry-leading assessment of current and zero-day threats and vulnerabilities.

**Measures for ensuring system configuration, including default configuration Measures for internal IT and IT security governance and management**

FTI has processes in place to confirm compliance with configuration standards. This includes a process for newly created device (i.e., checklist), at least annual reviews and hardening, removal of unnecessary / insecure services, and alarms set for key events (i.e., change in security group, configuration).

**Measures for certification/assurance of processes and products**

FTI holds the Certified Enterprise designation from Verizon Cybertrust and participates in their Security Management Program (SMP). The SMP is a comprehensive security risk reduction and certification program that addresses all aspects of proactive information security, from network and system analysis to physical and policy inspection. The cornerstone of SMP is the International Standards Organization (ISO) standard 27002.

As part of the Cybertrust Third Party assessment schedule, FTI Consulting's Global Cybersecurity and Privacy function undergoes the following reviews by the Verizon Security Certification organization:

- Policy Review — evaluates the documentation and inspects the contents of key security policies — Annually.
- Process and Procedure Validation — Annually.
- Physical Inspection — evaluates the implementation of security controls in the physical environment surrounding critical network infrastructure, including doors, HVAC, entry logs, power redundancy, etc. — Annually.
- External Risk Assessments (Network and System-level scans) — Quarterly identifies possible risk areas in an organization's external network infrastructure and assesses its consistency with key controls.
- Penetration testing (External and Internal – Network and System-level) is conducted by a separate third-party — Annually.

Individual business units may hold additional certifications or use tools that are supported by additional certifications.

**Measures for ensuring data minimisation**

FTI only acquires data for the intended purpose by working with the client or business partner to ensure only the minimum amount of necessary data is obtained.

**Measures for ensuring data quality**

FTI is dedicated to providing its clients with high quality services that meet our standards of excellence and integrity. The quality of the work for each of our clients is monitored by the Senior Managing Directors responsible for each engagement along with the highly qualified colleagues in their practice teams and business segments. On a broader level, FTI sets the tone for our global organization in our Code of Conduct (https://www.fticonsulting.com/~/media/Files/us-files/our-firm/guidelines/fti-code-of-conduct.pdf) which discusses our commitment to quality throughout, and in particular in our Statement of Values.

FTI takes into account the principle of purpose limitation, while making sure that the data is adequate, relevant and not excessive for the legitimate purpose. FTI enables data subjects to exercise their rights, including the rights of access and, as appropriate, the rectification, erasure or blocking of Personal data and keep data accurate, and not retain it any longer than necessary.

**Measures for ensuring limited data retention**

FTI has a records retention policy that ensures records are retained for required and necessary periods of time; providing that records which are no longer useful are properly destroyed; and providing that records to be retained are stored methodically and economically. FTI uses their reasonable and best efforts to prevent the premature destruction of Records. The organization must have processes to return data upon end of contract and destroy data using appropriate mechanisms upon Department of Defense (DoD) and National Institute of Standards and Technology (NIST) standards for all data bearing devices.

**Measures for ensuring accountability**

FTI has a defined process to resolve complaints about privacy and its collection or use of personal information in compliance with the EU-US Privacy Shield Principles. FTI has measures in place to ensure complaints are resolved within 1 month. Unless otherwise dictated by local law, the exact number of days to comply with a request varies, depending on the month in which the request was made and is calculated based on the day the request is received plus one (regardless of whether the day is a working day or not) until the corresponding calendar date in the next month.

**Measures for allowing data portability and ensuring erasure**

FTI receives requested Personal Data directly or provide access to a tool which allows the requestor to extract the information themselves using a self-service type model.

The Personal Data requested is required to be provided in a format and structure which is commonly used and machine-readable. The following machine-readable formats:

- CSV: (Comma separated values) a format that stores tabular data (numbers and text) in plain-text form;
- PDF: (Portable Document Format) a file format used mainly to represent documents such that layout will stay the same independent of the system environment;
- XML: (eXtensible Markup Language) a markup language that defines a set of rules for encoding documents in a format that can be both human and machine readable;
- JSON: (JavaScript Object Notation) a machine-readable data format derived from the JavaScript language used for representing simple data structures and associative arrays; or
- HTML: (HyperText Markup Language) the main markup language for displaying web pages and other information in a web browser.

FTI has a data erasure process in place to track and manage responses, and, as necessary, provide updates to the relevant regulatory authority and/or input into management reports. The organization must verify the identity of the data subject before disclosing any personal information. The organization should only refuse to comply with an erasure request if it is “manifestly unfounded or excessive” or, alternatively may elect to charge a “reasonable fee.” The response is in written communication together with the documents containing the proper erasure of data.

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NORTH DAKOTA**

In re: Bankruptcy No. 24-30167

Pro-Mark Services, Inc., Chapter 7

Debtor.

**NOTICE OF SUPPLEMENT TO APPLICATION FOR APPROVAL OF EMPLOYMENT AND RETENTION OF CONSULTING EXPERT AND TESTIFYING EXPERT**

The Trustee filed and served a Supplement to Application for Approval of Employment and Retention of Consulting Expert and Testifying Expert dated August 28, 2026 Your rights may be affected in the action. You should read the papers carefully and discuss the matters with your attorney if you have one. If you want the court to consider your views you should mail a written response to the action, within 14 days of the date of mailing of this document, and file the response with the Clerk of Bankruptcy Court and a copy served upon the U.S. Trustee and Bankruptcy Trustee.

| | | |
|---|---|---|
| Clerk, U.S. Bankruptcy Court<br>Quentin N Burdick U.S. Courthouse<br>655 First Ave N – Ste 210<br>Fargo ND 58107-4932 | United States Trustee<br>314 S Main Ave.<br>Suite 303<br>Sioux Falls SD 57104-6462 | Trustee<br>(See address below) |

DATE OF MAILING: August 28, 2026

/s/ Erik A Ahlgren
Erik Ahlgren, Chapter 7 Trustee
Ahlgren Law Office, PLLC
220 W Washington Ave. Ste 105
Fergus Falls MN 56537
218-998-2775