**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| **In Re:** | ) | |
| | ) | **Chapter 7** |
| **Pro-Mark Services, Inc.** | ) | |
| | ) | **Case No. 24-30167** |
| **Debtor** | ) | |
| | ) | |
| | ) | |
| | ) | |

**OBJECTION OF MIGUEL PAREDES TO FIRST INTERIM APPLICATION**
**FOR ALLOWANCE OF COMPENSATION TO FTI CONSULTING, INC.**

Creditor Miguel Paredes objects to the First Interim Application for Allowance of Compensation to FTI Consulting, Inc. (the "Fee Application") filed by FTI Consulting, Inc. ("FTI"). (Bankr. Doc. 305.)

**BACKGROUND**

**A. The ERISA Claim.**

1. On April 22, 2024 (the "Petition Date"), Pro-Mark Services, Inc. (the "Debtor") filed a voluntary petition under chapter 7 of the United States Bankruptcy Code. (Bankr. Doc. 1.) Erik A. Ahlgren is trustee of the Debtor's estate.

2. Prior to the Petition Date, the Debtor established the Pro-Mark Services, Inc. Employee Stock Ownership Plan (the "ESOP") and the Pro-Mark Services, Inc. Employee Stock Ownership Trust (the "ESOP Trust"). As of the Petition Date, the Debtor or its designee served as the ESOP administrator.

3. By virtue of Bankruptcy Code section 704(a)(11), Mr. Ahlgren succeeded the pre-petition Debtor as ESOP administrator.

4. As ESOP administrator, Mr. Ahlgren's responsibilities are limited "to perform the obligations required of the [employee benefits plan] administrator." 11 U.S.C. § 704(a)(11).

Allegedly "to perform" such obligations, Mr. Ahlgren appointed himself ESOP trustee, a role he obviously recognized as separate and distinct from his duties as plan administrator. For instance, as opposed to an ESOP trustee, the Employee Retirement Income Security Act of 1974 ("ERISA") defines a plan administrator's duties as principally related to plan operation and administration. *See e.g.*, 29 U.S.C. §§ 1021, 1024 (setting forth plan administrator duties such as disclosure, reporting and plan operations).

5. Mr. Ahlgren clearly recognized that in appointing himself ESOP trustee, he would wear that hat to assert litigation claims arising from ERISA. As such, he must act in that capacity with an "eye single" to ESOP participants as opposed to stakeholders in the Debtor's estate. *Rozo v. Principal Life Ins. Co.*, 48 F.4th 589, 595 (8th Cir. 2022). *See also* 29 U.S.C. § 404(a)(1) (statutory duty of loyalty requires action "solely in the interests of plan participants and their beneficiaries.")

6. Mr. Paredes is a creditor in the chapter 7 case. (*See* Claim No. 40.) Prior to the Petition Date, the Debtor retained Mr. Paredes as an independent ESOP trustee to evaluate a proposed transaction whereby the ESOP Trust would purchase all of the Debtor's stock. Mr. Paredes' retention is memorialized in a May 21, 2020 Engagement Agreement between the Debtor and Mr. Paredes. (Adv. Proc. Doc. 155-1.)

7. On August 26, 2024, Mr. Ahlgren, in his capacities as chapter 7 trustee and purportedly as ESOP trustee, commenced Adversary Proceeding No. 24-07014 asserting various claims against several defendants. Plaintiff's operative pleading in the Adversary Proceeding names Mr. Paredes as a defendant in count 21, alleging claims that arise solely under ERISA (the "ERISA Claim"). (Adv. Proc. Doc. 120, at Count 21.) The ERISA Claim is not brought on behalf

of the bankruptcy estate, and should there be a recovery, the estate's creditors will not share in it. (*See id.* at ¶ 420 (seeking plan-wide relief under ERISA section 409(a)).

**B. Paredes Objects to Plaintiff's Employment of FTI.**

8. On January 30, 2026, Mr. Ahlgren filed an application to employ FTI as a consulting and testifying expert in the Adversary Proceeding, including in regard to the ERISA Claim. (Bankr. Doc. 272.)

9. Mr. Paredes filed an objection to the motion to employ FTI on several grounds. (Bankr. Doc. 275.) One of those grounds was that Mr. Ahlgren brought the ERISA Claim pursuant to ERISA section 502(a)(2) seeking plan-wide relief on the ESOP's behalf under ERISA section 409. (Adv. Proc. Doc. 120, ¶ 420.) Accordingly, the objection stated that because any recovery from Mr. Paredes will only benefit the ESOP and its participants (and not the Debtor's estate and creditors), FTI should not be compensated from chapter 7 estate assets for work related to the ERISA Claim to the prejudice of general unsecured creditors like Mr. Paredes.

10. On February 27, 2026, the Court entered its Order approving FTI's employment with certain conditions, including without limitation that FTI must allocate its expert's fees between the ERISA Claim and other claims in the Adversary Proceeding. (Bankr. Doc. 281 at 5.) The Court further stated that Mr. Paredes could assert his objections to FTI's work pertaining solely to the ERISA Claim in the context of FTI's fee applications. (*Id.*)

11. In the initial application to employ FTI, Mr. Ahlgren and FTI did not disclose any connections between FTI and the Debtor. (Bankr. Doc. 272.)

**C. Ahlgren/FTI Fail to Disclose Prepetition Connection to Debtor/Scope of Work.**

12. On August 28, 2026, months after the Court's approval with conditions of FTI's employment, Mr. Ahlgren and FTI supplemented the FTI employment application to disclose that

FTI did in fact have a connection to the Debtor by virtue of a prepetition engagement between FTI and Pro-Mark. (Bankr. Doc. 301.) Mr. Ahlgren described the prepetition engagement as being "limited to reviewing the Debtor's general ledger and payroll data and producing reports from these sources," which the Debtor used "to respond to inquiries made by the United States Department of Justice as part of its investigation into the Debtor." (*Id*. at ¶ 6.) Mr. Ahlgren further asserted that the prepetition engagement has no impact on FTI's current work for Mr. Ahlgren and has no effect on FTI's status as a disinterested person in the chapter 7 bankruptcy. (*Id*. at ¶ 7.)

13. However, during the course of discovery in the Adversary Proceeding, it has become apparent that FTI created several reports in connection with its prepetition engagement with the Debtor that are relevant to and should be discoverable in the Adversary Proceeding, thereby making FTI a potential fact witness in the Adversary Proceeding. *See e.g.*, **Exhibits 1 and 2** (correspondence between counsel for Bergs and creditor Bad Investments, Inc. and Mr. Ahlgren's counsel addressing the scope of FTI's prepetition work for Pro-Mark) (attachments omitted).

14. Based on the foregoing, and for the reasons set forth more fully below and in Mr. Paredes's objection to FTI's retention (Bankr. Doc. 275, fully incorporated here), the Court should deny the Fee Application.

## THE OBJECTION

### A. The Court Should Deny The Fee Application Because FTI Is Not Disinterested and May Be Called As A Fact Witness.

15. Bankruptcy Rule 2014 requires applications for retention of professionals to include a verified statement of the person's connections with the Debtor, creditors and any other party in interest. Fed. R. Bankr. P. 2014. "The burden rests upon the professional completing the verified statement under Bankruptcy Rule 2014 to come forward with all facts pertinent to such

applicant's eligibility to serve under 11 U.S.C. § 327." *In re Tomczak*, 283 B.R. 730, 734-35 (Bankr. E.D. Wis. 2002) ("Full disclosure is a continuing responsibility on the part of the professional employed by the trustee.").

16. Pursuant to Bankruptcy Code section 328, the Court "may deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327 . . . if, at any time during such professional person's employment under section 327 . . . such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed." 11 U.S.C. § 328(c); *see Tomczak* at 734-35 (explaining that Bankruptcy Rule 2014 implements Bankruptcy Code section 327, while section 328(c) reinforces section 327); *see, also, In re Weaver Potato Chip Co., Inc.*, 243 B.R. 737, 741 (Bankr. D. Neb. 2000) ("Because the integrity of the bankruptcy process requires strict adherence to conflict of interest rules, a 'rule of lenity' as to employment of professionals for the estate would go against the fiduciary interests the debtor owes to creditors.").

17. "Section 328(c) empowers the court to deny compensation and reimbursement to an employed professional person if it is discovered that the professional is not disinterested or represents or holds an interest adverse to the estate. Thus, § 328(c) is aimed squarely at penalizing those professionals who are employed by the estate, but who have violated the conflict of interest provisions of § 327 and Rule 2014." *In re Benjamin's-Arnolds, Inc.*, No. BKY 4-90-6127, 1997 WL 86463, at *7 (Bankr. D. Minn. Feb. 28, 1997).

18. In its prepetition engagement with Pro-Mark, FTI created several reports that are relevant to and should be discoverable in the Adversary Proceeding. While Mr. Ahlgren has characterized FTI's prepetition work as unrelated to FTI's retention, it is related to the ERISA

Claim (and the other claims) making FTI a fact witness in the Adversary Proceeding. (*See* Exhs. 1, 2.) Indeed, the metadata associated with such reports reveal, at a minimum, that FTI conducted a review and analysis of Pro-Mark's transactions that Mr. Ahlgren has placed at issue in the Adversary Proceeding. (*See e.g.,* Exh. 2)

19. Accordingly, the Court should deny the Fee Application because Mr. Ahlgren and FTI failed to adequately disclose the prepetition connections between Pro-Mark and FTI. Contrary to Mr. Ahlgren's and FTI's supplemental disclosures, it is evident that FTI's prepetition engagement impacts FTI's current work as Mr. Ahlgren's expert in the Adversary Proceeding and affects FTI's status as a disinterested person.

### B. The Court Must Deny the Portion of the Fee Application Allocated to the ESOP Claim.

20. Alternatively, the Court must deny the Fee Application insofar as it seeks compensation from the bankruptcy estate for work done to support the ESOP Claim because (i) there is no conceivable way the bankruptcy estate benefits from that work and (ii) such work is not necessary to the administration of the case.

21. While Mr. Ahlgren may employ professionals to assist him in carrying out his duties upon Court approval pursuant to Bankruptcy Code section 327, "[a]pproval of employment under section 327, however, does not constitute a right to be paid from the estate." *In re Grabanski*, No. BR 10-30902, 2013 WL 1702416, at *5 (Bankr. D.N.D. Apr. 19, 2013) (citations omitted). The Court must determine reasonable compensation for the professional's actual, necessary services in accordance with Bankruptcy Code section 330. *Id*. (citing 11 U.S.C. § 330(a)(1).) Moreover, the Court should disallow compensation "for services that were not reasonably likely to benefit the debtor's estate or necessary to the administration of the case." *Id*. (quoting 11 U.S.C. § 330(a)(4)(A)).

22. Because the sole beneficiary of the ERISA Claim is the ESOP, there is no statutory authority to use estate assets to fund FTI's work that solely relates to the ERISA Claim. 11 U.S.C. § 541(b)(1), (b)(7) (excluding the ERISA Claim from property of the estate because such claims are "solely for the benefit of an entity other than the debtor," namely the ESOP and ESOP participants). Indeed, FTI's work pertaining to the ERISA Claim fundamentally provides no benefit to the Debtor's estate, because no recovery on the ERISA Claim will flow to the estate and its creditors.

23. Moreover, FTI's work pertaining to the ERISA Claim is not necessary to the administration of the case. While Bankruptcy Code section 704(a)(11) requires a bankruptcy trustee to "perform the obligations required of the administrator", those "obligations" relate to plan administration and operational matters as set forth in ERISA that will arise upon a recovery on the ESOP Claim, not the prosecution of it.

24. For example, as the successor plan administrator, Mr. Ahlgren must assure that any recovery is properly allocated to ESOP accounts, provide necessary disclosures to the participants and to the Department of Labor, hire a qualified accountant, and tend to related plan operational matters. *E.g.,* 29 U.S.C. §§ 1021 (various disclosure obligations), 1023 (engage accountant to examine administrator's account allocations), 1024 (filings with DOL), 1025 (prepare account reports to participants).

25. Mr. Ahlgren's conduct is the best evidence that even he recognized the limited scope of a plan administrator's obligations under Code section 704(a)(11). After all, he understood that one of the "obligations" was to appoint an ESOP trustee to bring the ESOP Claim because bringing the claim for plan-wide relief was beyond the scope of what Congress intended in Code

section 704. Otherwise, he would have done so in his plan administrator capacity. Surely he did not consider the appointment of an ESOP trustee as superfluous, redundant or illusory.

26. This conclusion is bolstered by cases arising in the bankruptcy context holding that Code section 704(a)(11) "neither alters the substantive duties of ERISA plan administrators nor establishes substantive rights regarding ERISA plans." *In re Robert Plan Corp.*, 777 F.3d 594, 597 (2d Cir. 2015). Section 704(a)(11) is merely the procedural vehicle for the assertion of rights conferred by another statute, here ERISA. *Id*. (citing *In re U.S. Brass Corp.,* 110 F.3d 1261, 1268 (7th Cir. 1997)). "The payment of compensation for ERISA plan administrators is typically an issue that arises outside bankruptcy. It does not depend upon bankruptcy for its existence, nor does it involve an administrative matter that arises only in bankruptcy cases." *In re Robert Plan Corp.*, 777 F.3d at 597 (cleaned up) (quoting *In re AB & C Grp., Inc.,* 411 B.R. 284, 292 (Bankr. N.D. W.Va. 2009)).

27. Aside from the lack of any benefit to the estate and its irrelevance to case administration, depleting valuable estate assets to fund the ESOP trustee's prosecution of the ESOP Claim would prejudice unsecured creditors like Mr. Paredes, likely the largest unsecured creditor.

28. The Court should deny FTI compensation from the estate for all of its work allocated to the ESOP Claim because it does not benefit the bankruptcy estate nor is it necessary for the administration of the case. *See Matter of The Robert Plan Corp.*, No. 8-08-74573-REG, 2018 WL 1267870, at *2, *13-*14 (Bankr. E.D.N.Y. Mar. 1, 2018) (after remand from Second Circuit holding the Bankruptcy Court did not have jurisdiction to award fees to trustee and counsel from benefits plan assets, nor could it from estate assets because, as here, work for the plan did not benefit the bankruptcy estate).

## RESERVATION OF RIGHTS

29. This Objection is filed without prejudice to and with full reservation of Mr. Paredes's rights, claims, defenses, and remedies, including the right to amend, modify or supplement this Objection, to raise any additional objections, and without in any way limiting any other rights of Mr. Paredes to further object to the Fee Application on any grounds as may be appropriate and to object to FTI's subsequent compensation applications.

## CONCLUSION & RELIEF REQUESTED

Mr. Paredes requests that the Court deny the Fee Application (i) in its entirety as a result of the failure of Mr. Ahlgren and FTI to adequately disclose the pre-Petition connections between the Debtor and FTI; (ii) as to all of FTI's fees allocated to the ESOP Claim because such work does not benefit the bankruptcy estate, it is not necessary for the administration of the case, and it harms the estate's unsecured creditors like Mr. Paredes.

Respectfully submitted,

/s/ Michael L. Scheier
Michael L. Scheier (*pro hac vice*)
Joseph E. Lehnert (*pro hac vice*)
KEATING MUETHING & KLEKAMP PLL
One East Fourth Street, Suite 1400
Cincinnati, Ohio 45202
Tel: (513) 579-6952
Fax: (513) 579-6554
mscheier@kmklaw.com
jlehnert@kmklaw.com

Michael Gust (ND #06468)
ABST Law, P.C.
4132 30th Ave., S.W., Suite 100
Fargo, North Dakota 58106-0247
Tel: (701) 235-3300
Fax: (701) 237-3154
mgust@abstlaw.net

*Attorneys for Miguel Paredes*