UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

---

In re:
Pro-Mark Services, Inc.,

Debtor.

Bky. Case No. 24-30167
Chapter 7

**TRUSTEE'S REPLY TO MIGUEL PAREDES' OBJECTION TO FTI CONSULTING'S FIRST INTERIM FEE APPLICATION**

---

Erik A. Ahlgren, as chapter 7 trustee (the "Trustee") of the bankruptcy estate of Pro-Mark Services, Inc. (the "Debtor"), submits this reply to the Objection of Miguel Paredes to First Interim Fee Application for Allowance of Compensation to FTI Consulting, Inc. [ECF No. 305].

## INTRODUCTION

1. Mr. Paredes' objection is nothing more than a self-serving effort to exploit his alleged creditor status to obstruct prosecution of an adversary proceeding in which he is a defendant. Mr. Paredes recycles all the same arguments the Court already rejected when it approved FTI's retention. Mr. Paredes now also asserts that FTI is somehow not disinterested because it provided consulting services to the Debtor pre-petition (which the Trustee only recently discovered). This "disinterestedness" argument is yet another manufactured attempt to obstruct prosecution of the adversary proceeding. FTI's pre-petition engagement has been fully disclosed to this Court, has no bearing on the issues in the adversary proceeding, and has no impact on FTI's status as a disinterested person. At best, FTI's prior work *might* be the subject of cross examination at trial—although even that seems unlikely. Accordingly, the Trustee respectfully requests that the Court overrule the objection and approve FTI's first interim fee application.

## I. With Court Approval, the Trustee May Pay FTI's Reasonable Fees Relating to the ESOP Claims Using Bankruptcy Estate Assets.

2. In objecting to FTI's first interim fee application, Mr. Paredes raises the same arguments he made to FTI's retention.[1] He first asserts that bankruptcy estate assets cannot be used to pay FTI's fees allocable to the ESOP claims because such work is not necessary to administration of the estate. But the Court already rejected this argument. In its order dated February 27, 2026, the Court concluded as follows:

> If the Trustee employs a professional person with court approval and incurs fees for these professional services in the performance of his section 704(a)(11) duties that are necessary to the administration of the case, the Court has authority under sections 327 and 330 to approve the fees and authorize payment of them from the bankruptcy estate in this situation where the ESOP holds no assets to pay them.

[ECF No. 281.]

3. The circumstances have not changed. The Trustee has a duty under section 704(a)(11) to administer the ESOP. To fulfill that duty in this case, the Trustee must retain a professional person (*i.e.*, FTI and, specifically, Jack Schwager) to provide expert witness services in connection with the ESOP's prosecution of claims against Mr. Paredes and the Berg Defendants. And the ESOP currently has insufficient assets to pay such fees and expenses itself. As such, the Court, under 11 U.S.C. §§ 327 and 330, may approve and authorize payment of FTI's fees relating to the ESOP claims using bankruptcy estate assets.

4. Mr. Paredes also argues that FTI's ESOP fees cannot be paid using estate funds because the ESOP work does not "benefit" the bankruptcy estate. Again, the Court already rejected this argument. In the February order, the Court concluded:

> [S]ection 330 does not prohibit the Court from awarding reasonable compensation to a professional person when the bankruptcy estate received no benefit from the

---

[1] The Trustee incorporates by reference his reply to Mr. Paredes' objection to FTI's retention [ECF No. 277].

> services. . . . Rather, section 330 requires that the Court consider "whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title," and it bars the Court from allowing compensation for services were not reasonably likely to benefit the debtor's estate; or "necessary to the administration of the case."

[ECF No. 281.]

5. Here, FTI's fees for the ESOP claims are necessary to administration of the estate—specifically, for the Trustee to fulfill his duties under section 704(a)(11), as outlined above. And although benefit to the estate is not technically required for the Court to approve the fee application, FTI's ESOP-allocated fees materially benefit the estate in at least two ways.

6. First, FTI's work on the ESOP claims overlaps almost entirely (if not entirely) with its work on the bankruptcy estate claims. Put another way, FTI would have performed virtually the same work, and incurred virtually the same fees, even if there were only bankruptcy estate claims and no ESOP claims. For the ESOP claims, FTI will provide expert testimony on the Debtor's actual value in August 2020 and damages stemming from the ESOP transaction. That expert testimony involves the same analysis that will be relevant to the Trustee's claims for breach of fiduciary duty, fraud, securities fraud, and aiding and abetting/acting in concert liability, which involve issues of valuation, insolvency, reasonably equivalent value, and damages. Because of this overlap, FTI allocated its "August 2020 Analysis" time ***evenly*** between the ESOP claims and the bankruptcy estate claims. (*See* FTI Invoices.)

7. Second, FTI's expert witness services have and will assist Mr. Ahlgren, as ESOP Administrator and ESOP Trustee, in prevailing on the ESOP claims, and any recovery on the ESOP claims could reduce the claim filed by the Department of Labor (on behalf of the ESOP and its participants) against the bankruptcy estate. *See* Proof of Claim No. 15-1. Reducing a creditor claim is a benefit to the bankruptcy estate. *See In re Pearlman*, 2014 Bankr. LEXIS 1084, at *13

(Bankr. M.D. Fla. Mar. 20, 2014) ("[R]eduction or elimination of a claim against the estate provides a benefit to the estate because it 'free[s] up other funds to be distributed to unsecured creditors.'"); *In re Alvo Grain & Feed*, 2008 Bankr. LEXIS 2267, at *6 (Bankr. D. Neb. Aug. 26, 2008) (estate benefits from reduction of creditor claim).

**II. FTI Is Disinterested**

8. Mr. Paredes next argues that FTI is now not disinterested because it performed minor consulting work for the Debtor before the petition date and may be a fact witness at trial. On these grounds, Mr. Paredes asserts that the Court must deny FTI's fee application. These arguments are, at best, misplaced.

9. When the Trustee initially retained FTI to provide expert witness services, he was unaware of FTI's pre-petition work for the Debtor. During the course of discovery in the adversary proceeding, the Trustee learned of FTI's prior engagement. Upon learning of this prior work, the Trustee promptly filed a supplement to FTI's retention application, disclosing FTI's prior engagement, attaching a supplemental verified statement from FTI, and attaching a copy of the pre-petition engagement letter between the Debtor and FTI. [*See* ECF No. 301.] As set forth in that engagement letter, the Debtor retained FTI in September 2022 to assist the Debtor in connection with a "DOJ Subpoena" and provide "Data Analysis" services. [ECF No. 301 at 6.] Specifically:

> FTI will work with Counsel to assist in the access and acquisition of data contained in the QuickBooks application maintained by Client. Thereafter, and at the direction of Counsel, we will focus on the General Ledger ("GL") and Payroll date contained in QuickBooks. Counsel may ask us to analyze specific project-based data contained in QuickBooks, as well. FTI will review, assess and validate the data, if necessary, and will share our findings with Counsel.

[*Id.*] Additionally, although not necessary or required, FTI has implemented an ethical wall to ensure that none of the FTI personnel who worked on the pre-petition engagement are working on the current engagement. [*Id.* at 3 ¶ 4.]

10. Mr. Paredes argues that FTI's pre-petition services make it an interested party. They do not. Under 11 U.S.C. § 101(14), the term "disinterested person" means

> a person that— (A) is not a creditor, an equity security holder, or an insider; (B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and (C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11. With respect to subpart (C), an interest "is considered adverse to the estate if that interest would tend to lessen the value of the bankruptcy estate or foster a predisposition against the estate." *In re Keeley & Grabanski Land P'ship*, 2013 Bankr. LEXIS 2205, at *9 (Bankr. D.N.D. May 30, 2013) (quoting *Blumenthal v. Myers (In re M&M Mktg., L.L.C.)*, 426 B.R. 796, 804 (B.A.P. 8th Cir. 2010)); *see also Ritchie Special Credit Invs., Ltd. v. United States Tr.*, 620 F.3d 847, 853 (8th Cir. 2010) ("Adverse interest has been defined to include the 'possession of a predisposition under circumstances that create a bias against the estate.'").

12. Here, there can be no dispute that FTI "is not a creditor, an equity security holder, or an insider" of the Debtor. As set forth in the supplement to FTI's retention application, the Debtor paid all of FTI's pre-petition fees. [ECF No. 301 at 3 ¶ 3.] And according to the Debtor's pre-petition books and records, those fees totaled just $31,371.23 for services performed from September 2022 through May 2023. (Decl. of E. Ahlgren ¶¶ 2-4.)[2]

[2] FTI's pre-petition fees are not and will not be part of the damages claim in the adversary proceeding. (Decl. of E. Ahlgren ¶ 5.)

13. Additionally, FTI "is not, and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor." FTI was merely a service provider.

14. Finally, FTI does not "have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason." To the contrary, at all times, FTI's work has been in complete alignment with the interests of the estate, creditors, and equity security holders. Pre-petition, FTI assisted the Debtor relating to the DOJ investigation, which benefited the Debtor, its creditors, and its equity owner, the ESOP. Now post-petition, FTI is providing expert witness services in an adversary proceeding to recover assets, which benefits the estate, creditors, and its equity owner, the ESOP.

15. Mr. Paredes' assertion that FTI may be a fact witness in the adversary proceeding does not change the "disinterestedness" analysis. At the outset, the Trustee disputes that FTI could be a fact witness. FTI simply compiled certain QuickBooks data and generated reports. The Trustee has produced copies of FTI's reports to Mr. Paredes and the Berg Defendants in discovery. The reports have nothing to do with any of the issues in the adversary proceeding. Further, none of the Trustee's expert witnesses in the adversary proceeding (including FTI) are relying on the reports in forming their opinions.[3] Notably, Mr. Paredes has not explained how or why FTI's prior work would be relevant to the adversary proceeding or adverse to the Trustee's claims. Mr. Paredes only makes conclusory assertions of a potential adverse interest.

16. Regardless, even if FTI or one of its employees may somehow be a fact witness based on the pre-petition engagement, this does not make FTI an interested party. FTI still is not a creditor, equity security holder, or insider of the Debtor. FTI still was not and is not a director,

[3] The Trustee and its counsel have not even provided copies of the reports to the experts.

officer, or employee of the Debtor. And FTI still would not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders. At best, any prior work could be a basis for cross examination of FTI at trial, although the relevance is unclear.

17. FTI's role in the adversary proceeding is to provide expert testimony to support the estate claims and the ESOP claims. The testifying witness will be Jack Schwager. To avoid any potential concern, FTI has implemented an ethical wall between Mr. Schwager and his team and the FTI professionals who provided services to the Debtor pre-petition. And Mr. Schwager is not relying on any reports that FTI prepared pre-petition in forming his opinions. Thus, any fact testimony from FTI about the pre-petition work would have no impact on Mr. Schwager's opinions, nor could it create any bias in Mr. Schwager against the estate or lessen the value of the estate. FTI's expert witness services indisputably have and will continue to benefit the estate, creditors, and the ESOP, as owner.

18. Lastly, as a practical matter, a professional being retained before and after the petition date is routine. In chapter 11 cases, for example, a debtor's pre-petition counsel is often retained as counsel post-petition. Financials advisors are likewise routinely retained before and after the petition date. The existence of a pre-petition engagement does not create an adverse interest.

## CONCLUSION

Based on the foregoing, Mr. Paredes' objection should be overruled, and the Court should enter an order approving FTI's first interim fee application.

Date: October 13, 2026

/e/ *Peter D. Kieselbach*
Michael B. Fisco (Minnesota #0175341)
(*Admitted Pro Hac Vice*)
Peter D. Kieselbach (Minnesota #0397531)
(*Admitted Pro Hac Vice*)
Carlos A. Alonso Gayon (Minnesota #0504548)
(*Admitted Pro Hac Vice*)
**GREENBERG TRAURIG, LLP**
90 South Seventh Street, Suite 3500
Minneapolis, MN 55402
Telephone: (612) 259-9700
Email: fiscom@gtlaw.com
kieselbachp@gtlaw.com
carlos.alonsogayon@gtlaw.com

*and*

Erik A. Ahlgren (North Dakota #09561)
Ahlgren Law Office, PLLC
220 W. Washington Ave. Suite 105
Fergus Falls, MN 56537
Telephone: (218) 998-2775
Email: erik@ahlgrenlawoffice.net

*Attorneys for the Trustee*