**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NORTH DAKOTA**

| | |
|---|---|
| In Re:<br><br>Pro-Mark Services, Inc.,<br><br>Debtor. | Case No.: 24-30167<br><br>Chapter 7 |

**MOTION TO LIFT AUTOMATIC STAY**

**TO PERMIT EXERCISE OF SETOFF RIGHTS**

Capital Credit Union ("CCU"), as a secured creditor of Debtor Pro-Mark Services, Inc. ("Debtor"), moves this Court, pursuant to Rule 4001 and Rule 9014 of the Federal Rules of Bankruptcy Procedure and 11 U.S.C. §§ 362(d) and 553(a), to lift the automatic stay existing by right of 11 U.S.C. §362(a) so as to permit CCU to exercise its right to set off the $529,871.78 in funds represented by four uncashed cashier's checks Debtor obtained from CCU, which funds were debited from Debtor's account at CCU, and remain held in CCU's general ledger.

**JURISDICTION AND VENUE**

1. On April 22, 2024 (the "Petition Date"), Debtor filed a Chapter 7 petition for relief under the United States Bankruptcy Code in the U.S. Bankruptcy Court for the District of North Dakota.

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).

3. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory and legal predicates for the relief requested herein are sections 362(d) and 553(a) of the Bankruptcy Code and Bankruptcy Rule 4001(a).

## FACTUAL BACKGROUND

5. Debtor executed and delivered to CCU the following instruments with respect to a loan from CCU to Debtor in the sum of $14,750,000.00 (hereinafter "Loan No. 1"):

a. Business Loan Agreement dated December 31, 2021 with respect to a loan in the sum of $14,750,000.00 ("Loan No. 1 Business Loan Agreement"). A true and correct copy of Loan No. 1 Business Loan Agreement was previously provided to the Court as ECF No. 14, Ex. A-1, and terms of the same are incorporated herein by reference.

b. Promissory Note dated December 31, 2021 in the original principal sum of $14,750,000.00 ("Loan No. 1 Note"). Interest accrued at variable rates as set forth in the note and matures on January 15, 2028. A true and correct copy of Loan No. 1 Note was previously provided to the Court as ECF No. 14, Ex. A-2, and terms of the same are incorporated herein by reference.

c. Commercial Security Agreement dated December 31, 2021 ("Loan No. 1 Security Agreement"). A true and correct copy of Loan No. 1 Security Agreement was previously provided to the Court as ECF No. 14, Ex. A-3, and terms of the same are incorporated herein by reference.

d. Financing Statement #21-000991648 filed with the North Dakota Secretary of State's Office on December 31, 2021 ("Loan No. 1 Financing Statement"). A true and correct copy of Loan No. 1 Financing Statement was previously provided to the Court as ECF No. 14, Ex. A-4, and terms of the same are incorporated herein by reference.

e. Modification Agreement dated July 14, 2022; a First Amendment to Modification Agreement dated July 19, 2022; a Second Amendment to

Modification Agreement dated January 30, 2023; a Third Amendment to Modification Agreement dated May 2, 2023; and a Fourth Amendment to Modification Agreement dated January 12, 2024 (collectively, the "Loan No. 1 Modifications"). True and correct copies of the Loan No. 1 Modifications were previously provided to the Court as ECF No. 14, Ex. A-5, and terms of the same are incorporated herein by reference.

f. The Loan No. 1 Business Loan Agreement, Loan No. 1 Note, Loan No. 1 Security Agreement, Loan No. 1 Financing Statement, and Loan No. 1 Modifications are hereinafter collectively, the "Loan No. 1 Documents".

6. Debtor executed and delivered to CCU the following instruments with respect to a loan from CCU to Debtor in the sum of $1,000,000.00 (hereinafter "Loan No. 2"):

a. Business Loan Agreement dated December 31, 2021 with respect to a loan in the sum of $1,000,000.00 ("Loan No. 2 Business Loan Agreement"). A true and correct copy of Loan No. 2 Business Loan Agreement was previously provided to the Court as ECF No. 14, Ex. B-1, and terms of the same are incorporated herein by reference.

b. Promissory Note dated December 31, 2021 in the original principal sum of $1,000,000.00 ("Loan No. 2 Note"). Interest accrued at variable rates as set forth in the note and matures on January 15, 2023. A true and correct copy of Loan No. 2 Note was previously provided to the Court as ECF No. 14, Ex. B-2, and terms of the same are incorporated herein by reference.

c. Commercial Security Agreement dated December 31, 2021 ("Loan No. 2 Security Agreement"). A true and correct copy of Loan No. 2 Security

Agreement was previously provided to the Court as ECF No. 14, Ex. B-3, and terms of the same are incorporated herein by reference.

d. Modification Agreement dated May 2, 2023 and Amendment to Modification Agreement dated January 12, 2024 (collectively, the "Loan No. 2 Modifications"). True and correct copies of the Loan No. 2 Modifications were previously provided to the Court as ECF No. 14, Ex. B-4, and terms of the same are incorporated herein by reference.

e. The Loan No. 2 Business Loan Agreement, Loan No. 2 Note, Loan No. 2 Security Agreement, and Loan No. 2 Modifications are hereinafter collectively, the "Loan No. 2 Documents".

7. Debtor had an S-12 (Business Checking) deposit account at CCU, which was a standard business checking account (the "S-12 Account"). In applying to open an account at CCU, Debtor agreed to be bound by the terms of CCU's Business Membership and Business Accounts Agreements. True and correct copies of Debtor's Application dated March 25, 2019, and the Business Membership and Business Accounts Agreements (collectively, the "CCU Account Agreement") were previously provided to the Court as ECF No. 14, Ex. C, and terms of the same are incorporated herein by reference.

8. Pursuant to the Loan No. 1 Security Agreement and Loan No. 2 Security Agreement (collectively, the "Security Agreements"), Debtor granted a security interest in essentially all of its assets as follows (the "CCU Collateral"):

**COLLATERAL DESCRIPTION.** The word "Collateral" as used in this Agreement means the following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

> **All inventory, equipment, vehicles, accounts (including but not limited to all health-care-insurance receivables), chattel paper, instruments (including but not limited to all promissory notes), letter-of-credit rights, letters of credit, documents, deposit accounts, investment property, money, other rights to payment and performance, and general intangibles (including but not limited to all software and all payment intangibles); all attachments, accessions, accessories, fittings, increases, tools, parts, repairs, supplies, and commingled goods relating to the foregoing property, and all additions, replacements of and substitutions for all or any part of the foregoing property; all insurance refunds relating to the foregoing property; all good will relating to the foregoing property; all records and data and embedded software relating to the foregoing property, and all equipment, inventory and software to utilize, create, maintain and process any such records and data on electronic media; and all supporting obligations relating to the foregoing property; all whether now existing or hereafter arising, whether now owned or hereafter acquired or whether now or hereafter subject to any rights in the foregoing property; and all products and proceeds (including but not limited to all insurance payments) of or relating to the foregoing property**

In addition, the word "Collateral" also includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

> (A) All accessions, attachments, accessories, tools, parts, supplies, replacements of and additions to any of the collateral described herein, whether added now or later.
>
> (B) All products and produce of any of the property described in this Collateral section.
>
> (C) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.
>
> (D) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.
>
> (E) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

9. CCU perfected its liens in the CCU Collateral by filing of the Financing Statement on December 31, 2021.

10. A search conducted post-petition by counsel for CCU of the North Dakota Secretary of State's Office records shows that CCU is the only entity with blanket liens on Debtor's personal property assets.

11. Pursuant to the Loan No. 1 Modifications, Debtor was obligated to make the following payments:

> **For the period from January 15, 2024 through May 15, 2024, Pro-Mark will make the following monthly payments to the Credit Union on the following due dates:**
>
> - **January 15, 2024 - $163,059.68**
> - **February 15, 2024 - $163,059.68**
> - **March 15, 2024 - $163,059.68**
> - **April 15, 2024 - $163,059.68**
> - **May 15, 2024 - $163,059.68**

12. Debtor failed to make the April 15, 2024 and May 15, 2024 payments and thus is in default under the Loan No. 1 Documents. Debtor is also in default under the Loan No. 2 Documents by virtue of cross-default provisions in both sets of loan documents.

13. As of the Petition Date, Debtor owed the following amounts to CCU (the "Indebtedness"):

| Loan | Principal | Interest | Payoff (4/22/24) |
|---|---|---|---|
| Loan No. 1 | $11,163,741.08 | $210,488.93 | $11,374,230.01 |
| Loan No. 2 | $817,483.68 | $14,017.30 | $831,500.98 |
| | | **Total:** | **$12,205,730.99** |

14. On June 22, 2023, Debtor obtained a cashier's check 99-0000152455 from CCU in the amount of $92,532.00, payable to Dept of Health and Human Services HIS, and drawn from funds on deposit in the S-12 Account ("Check 99-0000152455"). A true and correct copy of Check 99-0000152455 is attached hereto as **Exhibit 1**, and terms of the same are incorporated herein by reference. To date, Check 99-00001452479 has not been negotiated, and the same $92,532.00 removed from the S-12 Account by the issuance of Check 99-00001452479 remains in CCU's general ledger.

15. On June 28, 2023, Debtor obtained a cashier's check 99-0000152479 from CCU in the amount of $31,728.78, payable to Division of Engineering Services, and drawn from funds on deposit in the S-12 Account ("Check 99-0000152479"). A true and correct copy of Check 99-0000152479 is attached hereto as **Exhibit 2**, and terms of the same are incorporated herein by reference. To date, Check 99-00001452479 has not been negotiated, and the $31,728.78 removed

from the S-12 Account by the issuance of Check 99-00001452479 remains in CCU's general ledger.

16. On September 19, 2023, Debtor obtained a cashier's check 99-0000152708 from CCU in the amount of $273,224.00, payable to Division of Engineering Services, and drawn from funds on deposit in the S-12 Account ("Check 99-0000152708"). A true and correct copy of Check 99-0000152708 is attached hereto as **Exhibit 3**, and terms of the same are incorporated herein by reference. To date, Check 99-0000152708 has not been negotiated, and the same $273,224.00 removed from the S-12 Account by the issuance of Check 99-0000152708 remains in CCU's general ledger.

17. On February 19, 2024, Debtor obtained a cashier's check 99-0000153136 from CCU in the amount of $132,387.00, payable to Division of Engineering Services, and drawn from funds on deposit in the S-12 Account ("Check 99-0000153136"). A true and correct copy of Check 99-0000153136 is attached hereto as **Exhibit 4**, and terms of the same are incorporated herein by reference. To date, Check 99-0000153136 has not been negotiated, and the same $132,387.00 removed from the S-12 Account by the issuance of Check 99-0000153136 remains in CCU's general ledger.

18. The Check 99-0000152455, Check 99-00001452479, Check 99-0000152708, and Check 99-0000153136 are hereinafter collectively, the "Cashier's Checks".

19. Many of the subject loan documents provide that CCU has a right to setoff, including:

a. The Business Loan Agreements and Promissory Notes which state:

**STATUTORY LIEN.** Borrower agrees that all loan advances under this Agreement are secured by all shares and deposits in all joint and individual accounts Borrower has with Lender now and in the future. Borrower authorizes Lender, to the extent permitted by applicable law, to apply the balance in these accounts to pay any amounts due under this Agreement when Borrower is in default under this Agreement. Shares and deposits in an Individual Retirement Account and any other account that would lose special tax treatment under state or federal law if given as security are not subject to the security interest Borrower has given in Borrower's shares and deposits.

b. The Security Agreements which state:

**STATUTORY LIEN.** Grantor agrees that all Indebtedness is secured by all shares and deposits in all joint and individual accounts Grantor has with Lender now and in the future. Grantor authorizes Lender, to the extent permitted by applicable law, to apply the balance in these accounts to pay any amounts due under this Agreement when Grantor is in default under this Agreement. Shares and deposits in an Individual Retirement Account and any other account that would lose special tax treatment under state or federal law if given as security are not subject to the security interest Grantor has given in Grantor's shares and deposits.

c. The CCU Account Agreement which states:

14. **CCU Lien and Security Interest –**If you owe us money as a borrower, guarantor, endorser or otherwise, we have a statutory lien on the account funds in any account in which you have an ownership interest, regardless of their source, unless prohibited by law. We may apply these funds, without further notice to you, in any order to pay off your indebtedness. We may apply the funds on which we have a lien to pay off any indebtedness of the Business Member (or the Business Owner, if a Sole Proprietorship). You agree that we may offset against or deduct from any Account, including personal joint accounts, any amounts due or to become due to us by any Business Member (or Business Owner, if a Sole Proprietorship, including but not limited to account fees and loans or other debts, whether matured or not), even if the amount is not owed by all account holders on personal accounts. By not enforcing a lien, we do not waive our right to enforce it later. In addition, you grant the Credit Union a consensual security interest in your accounts, and we may use the funds from your accounts to pay any debt or amount now or hereafter owed the Credit Union, except for obligations secured by your residence and credit card accounts, unless prohibited by applicable law. All accounts are non-assignable and nontransferable to third parties.

20. Debtor is the remitter of each of the Cashier's Checks. Because CCU is both the drawer and the drawee of each Cashier's Check, CCU became obligated on each instrument upon its issuance, and the funds debited from the S-12 Account to purchase the Cashier's Checks became a debt owed by CCU to Debtor. Because none of the Cashier's Checks were ever negotiated or paid, that debt remains owing by CCU to Debtor and the corresponding funds remain in CCU's general ledger.

**RELIEF REQUESTED**

21. By this motion, CCU seeks entry of an order, pursuant to Sections 362(d)(1) and 553(a) of the Bankruptcy Code and Bankruptcy Rule 4001(a), for relief from the automatic stay to

permit CCU to set off against the Indebtedness the $529,871.78 in funds represented by the Cashier's Checks and currently held in CCU's general ledger.

22. CCU requests that pursuant to Bankruptcy Rule 4001(a)(3) any order entered granting CCU's relief from the stay be effective immediately. As CCU currently holds the funds represented by the Cashier's Checks, waiver of the stay will not harm Debtor.

**LAW AND ARGUMENT**

***A. CCU has a Perfected Security Interest in the Funds Represented by the Cashier's Checks***

23. The CCU Collateral expressly includes "instruments (including but not limited to all promissory notes)," "other rights to payment and performance," and "general intangibles (including but not limited to . . . all payment intangibles)," as well as "all products and proceeds . . . of or relating to the foregoing property." *See* ECF 14, at 24 & 61. The funds represented by the Cashier's Checks fall within the CCU Collateral under either form the interest may take. A cashier's check is a negotiable instrument—"a draft with respect to which the drawer and drawee are the same bank." N.D.C.C. § 41-03-04(7); *see also* N.D.C.C. § 41-09-02(1)(yy) (defining "instrument" to include a negotiable instrument). To the extent Debtor holds the Cashier's Checks, they are "instruments" within the CCU Collateral. To the extent Debtor instead holds the right to payment of the debited funds from CCU, that right is a "general intangible" or "payment intangible"—and an "other right to payment"—within the CCU Collateral, because it is not an "account," a "deposit account," or "money" under the Uniform Commercial Code. *Cf.* N.D.C.C. § 41-09-02(1)(uu), (b), (hh), (ggg).

24. A security interest in instruments and in general and payment intangibles is perfected by the filing of a financing statement. N.D.C.C. § 41-09-30(1); N.D.C.C. § 41-09-32(1). CCU perfected its liens in the CCU Collateral by filing the Financing Statement on December 31,

2021. The CCU Collateral further reaches property "whether now existing or hereafter arising, whether now owned or hereafter acquired," which captures the Cashier's Checks issued between June 2023 and February 2024. It cannot be disputed that the funds represented by the Cashier's Checks are CCU Collateral.

***b. CCU's Right of Setoff Under Section 553(a)***

25. The right of setoff allows entities that owe each other money to apply their mutual debts against each other thereby avoiding the "absurdity of making A pay B when B owed A." *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 18 (1995). In general, setoff is "favored and encouraged by the law, to avoid circuity of action and injustice." *N. Chi. Rolling Mill Co. v. St. Louis Ore & Steel Co.*, 152 U.S. 596, 616-17 (1894). In bankruptcy, there is a presumption in favor of the enforcement of setoffs. *See In re Larbar Corp.*, 177 F.3d 439, 447 (6th Cir. 1999); *In re De Laurentiis Ent. Grp. Inc.*, 963 F.2d 1269, 1277 (9th Cir. 1992); *In re Bridge Information Systems, Inc.*, 314 B.R. 421, 430 (Bankr. E.D. Mo. 2004) ("a creditor's right to setoff pre-petition mutual debts with the debtor has a long and venerable tradition in bankruptcy and therefore a presumption exists in favor of enforcing a creditor's right to setoff under § 553(a)").

26. The right of setoff by a creditor is governed by section 553 of the Bankruptcy Code, which states, in relevant part, that:

> [e]xcept as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case[.]

11 U.S.C. § 553(a).

27. Section 553 does not create a right of setoff or prescribe the means by which a setoff must be executed in order to be effective. Section 553 merely preserves any right of setoff if it

otherwise exists under applicable non-bankruptcy law, subject to certain limitations. *See Off. Comm. of Unsecured Creditors v. Mfrs. & Traders Tr. Co. (In re Bennett Funding Grp.)*, 146 F.3d 136, 138-39 (2d Cir. 1998) ("Section 553(a) of Title 11 of the United States Code does not create a right of setoff, but rather preserves whatever right exists under applicable non-bankruptcy law."); *Feltman v. Noor Staffing Grp., LLC (In re Corp. Res. Servs., Inc.)*, 564 B.R. 196, 200-06 (Bankr. S.D.N.Y. 2017).

28. The North Dakota Supreme Court has recognized the equitable right to setoff. *See, e.g., Forbes Equity Exchange v. Jensen,* 2014 ND 11, ¶ 11, 841 N.W.2d 759; *Dakota Partners, L.L.P. v. Glopak, Inc.*, 2001 ND 168, ¶ 21, 634 N.W.2d 520.

29. To establish the right to a setoff, the creditor must show that: (a) the creditor owes a debt to the debtor which arose before the commencement of the bankruptcy case; (b) the creditor has a claim against the debtor which arose before the commencement of the bankruptcy case; (c) the debt and the claim are mutual obligations; and (d) the creditor has a right of setoff under applicable non-bankruptcy law. *See In re Krause*, 261 B.R. 218, 222 (B.A.P. 8th Cir. 2001); *In re Sauer*, 223 B.R. 715, 724 (Bankr. D.N.D. 1998); *In re Kalenze*, 175 B.R. 35, 37 (Bankr. D.N.D. 1994).

30. Here, all the requirements of setoff are satisfied:

a) CCU owes a debt to Debtor—the funds represented by the Cashier's Checks, which CCU holds in its general ledger and owes to Debtor as remitter—which arose before the commencement of the bankruptcy case;

b) CCU has a claim against Debtor which arose before the commencement of the bankruptcy case (*i.e.*, the default under the Loan No. 1 Documents and Loan No. 2 Documents and the Indebtedness that remains due and owing to CCU); and

c) the debt CCU owes to Debtor for the funds represented by the Cashier's Checks and the Indebtedness owed by Debtor to CCU are mutual obligations; and

d) CCU has a right of setoff under applicable North Dakota law and also a contractual right of setoff as set forth above in the subject loan documents.

31. For the avoidance of doubt, CCU does not hereby seek authority to set off prepetition claims or debts against postpetition debts or claims.

***B. CCU's Right of Setoff is "Cause" for Relief from the Automatic Stay under Section 362(d)(1).***

32. The right to setoff is limited by the provisions of the automatic stay. Section 362(a)(7) of the Bankruptcy Code provides that the stay applies to "the setoff of any debt owing to the debtor." 11 U.S.C. § 362(a)(7). This enables the Court to determine the rights of the parties before Debtor or its estate is deprived of its interest in the funds represented by the Cashier's Checks. *See In re Corland Corp.*, 967 F.2d 1069, 1076 (5th Cir. 1992) (the automatic stay "does not defeat the right of setoff; rather, setoff is merely stayed pending an 'orderly examination of the debtor's and creditor's rights'" (internal citations omitted)).

33. The existence of a right of setoff constitutes sufficient "cause" to grant stay relief under § 362(d)(1) to permit setoff of mutual, prepetition debts, and, upon demonstrating a right of setoff, a creditor establishes a prima facie showing of cause for relief. *See In re Nuclear Imaging Sys., Inc.*, 260 B.R. 724, 730 (Bankr. E.D. Pa. 2000); *In re Warwick*, 179 B.R. 582, 584 (Bankr. W.D. Ark. 1995). Upon demonstrating a right to setoff, a creditor has established a prima facie showing of cause for stay relief under section 362(d)(1) of the Bankruptcy Code. *See In re Ealy*, 392 B.R. 408, 414 (Bankr. E.D. Ark. 2008); *U.S. v. Orlinski (In re Orlinski)*, 140 B.R. 600, 603 (Bankr. S.D. Ga. 1991); *In re Flanagan Bros., Inc.*, 47 B.R. 299, 303 (Bankr. D.N.J. 1985). Any objecting party bears the burden to rebut the prima facie showing. *See In re Szymanski*, 413 B.R.

232, 243 (Bankr. E.D. Pa. 2009); *In re Ealy*, 392 B.R. at 414; *In re Firestone*, 179 B.R. 148, 148 (Bankr. D. Neb. 1995).

34. As set forth above, CCU has demonstrated its right of setoff, thereby showing cause for relief from the stay under § 362(d)(1) of the Bankruptcy Code. Absent compelling circumstances to the contrary, the Court should grant CCU relief from the stay to set off the funds represented by the Cashier's Checks against the Indebtedness. *See Sec. & Exch. Comm'n v. Elliott*, 953 F.2d 1560, 1572 (11th Cir. 1992) (recognizing a strong federal policy allowing setoff unless there are compelling circumstances to the contrary), *rev'd in part on other grounds*, 998 F.2d 922 (11th Cir. 1993); *In re Sauer*, 223 B.R. 715 (refusing to recognize Section 105(a) as overriding the creditor's right to a setoff to allow Debtor use of funds in a Chapter 12 reorganization).

**NOTICE**

35. CCU will provide notice of this motion to: (a) Debtor; (b) counsel to Debtor; (c) the Chapter 7 Trustee; (d) the US Trustee; and (e) all parties that have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, CCU submits that no other or further notice is necessary.

**CONCLUSION**

36. WHEREFORE, for the reasons set forth herein, CCU respectfully requests that this Court enter an order granting relief from the automatic stay to permit CCU to set off the funds totaling $529,871.78 represented by the Cashier's Checks and held in CCU's general ledger against the Indebtedness, and granting such other and further relief as is just and proper.

Dated this 16th day of October, 2026.

**VOGEL LAW FIRM**

BY: */s/ Drew J. Hushka*

Caren W. Stanley (#06100)
cstanley@vogellaw.com
Drew J. Hushka (#08230)
dhushka@vogellaw.com
218 NP Avenue
PO Box 1389
Fargo, ND 58107-1389
Telephone: 701.237.6983
*ATTORNEYS FOR CAPITAL CREDIT UNION*

**VERIFICATION**

I, Brad Shetler, Chief Lending Officer of Capital Credit Union, based on my personal information and belief, declare under penalty of perjury that the facts set forth in the preceding Motion are true and correct, according to the best of my knowledge, information and belief.

Dated: October 16th, 2026

Signed: ______________________
Brad Shetler

EXHIBIT
1

CCUBismarckND>291378130< 06/23/23 220200000

Capital credit union
204 W. THAYER AVE.
BISMARCK, ND 58501

CHECK NO: 152455

Payee: PRO-MARK SERVICES INC
Address: 3275 OAK RIDGE LOOP E
WEST FARGO ND 58078

| Account Detail | Account # | Amount | Balance Available |
|---|---|---|---|
| FROM Business Checking | [redacted]812 | 92532.00 | [redacted] |

INTERNAL COPY

Payee DEPT OF HEALTH AND HUMAN SERVICES IHS

PRO-MARK SERVICES INC
3275 OAK RIDGE LOOP E
WEST FARGO ND 58078

MEMBER SIGNATURE

Ref: PINE RIDGE HEATING PLANT MOD01

NON-NEGOTIABLE Chk 152455 22 JUN 23 15:04 Br 12-696 Amt 92532.

EXHIBIT
2

CCUBismarckND>291378130< 06/29/23 220200004

Capital credit union
204 W. THAYER AVE.
BISMARCK, ND 58501

CHECK NO: 152479

Payee: DIVISION OF ENGINEERING SERVICES
Address: INDIAN HEALTH SERVICE
701 5TH AVENUE, SUITE 1600
SEATLLE, WA 98104

| Account Detail | Account # | Amount | Balance Available |
|---|---|---|---|
| FROM Business Checking | [redacted]0S12 | 31782.78 | Restricted |

INTERNAL COPY

Payee DIVISION OF ENGINEERING SERVICES

PRO-MARK SERVICES INC
3275 OAK RIDGE LOOP E
WEST FARGO ND 58078

MEMBER SIGNATURE

CASHIER'S CHECK NON-NEGOTIABLE Chk 152479 28 JUN 23 15:05 Br 12-480 Amt 31782.

EXHIBIT
3

CCUBismarckND>291378130< 09/21/23 220200000

CHECK NO: 152708

Capital credit union

204 W. THAYER AVE.
BISMARCK, ND 58501

Payee: DIVISION OF ENGINEERING SERVICES
Address: INDIAN HEALTH SERVICE
701 5TH AVE, STE 1600
SEATTLE, WA 98104

| Account Detail | Account # | Amount | Balance Available |
|---|---|---|---|
| FROM Business Checking | [redacted]0812 | 273224.00 | Restricted |

INTERNAL COPY

Payee DIVISION OF ENGINEERING SERVICES

PRO-MARK SERVICES INC
3275 OAK RIDGE LOOP E
WEST FARGO ND 58078

Mandy Grant
MEMBER SIGNATURE

CASHIER'S CHECK NON-NEGOTIABLE Chk 152708 19 SEP 23 15:14 Br 12-480 Amt 273224

123456780 $0.00

CCUBismarckND>291378130< 09/21/23 220200000

EXHIBIT
4

CAPITAL CREDIT UNION
204 W THAYER AVE PO BOX 2096
BISMARCK ND 58502

---

PRO-MARK SERVICES INC
5012 53RD ST S
STE G
FARGO ND 58104-6006

---

SUMMARY

CHECK WITHDRAWALS: 132,387.00

---

TRANSACTIONS

FROM: Business Checkin ******[redacted]12
AMOUNT: 132,387.00
BALANCE: 558,653.03
AVAIL BAL: 558,653.03
TO: Regular Share ******[redacted]1
BALANCE: 2,469,391.79
AVAIL BAL: 0.00

---

CHECK WITHDRAWAL DETAILS

CHECK AMOUNT: 132,387.00
PAYEE: DIVISION OF ENGINEE
RING SERVICES

---

VCH: 22113 19 FEB 24 12:47 BR: 12
OP: 696 Lyla H. TR: 349 MUL-PT
NET AMT: 132,387.00

*CREDIT UNION COPY*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NORTH DAKOTA**

| | |
|---|---|
| In Re:<br><br>Pro-Mark Services, Inc.,<br><br>Debtor. | Case No.: 24-30167<br><br>Chapter 7 |

**NOTICE OF MOTION**

TO ALL INTERESTED PARTIES:

NOTICE IS HEREBY GIVEN that Capital Credit Union, a creditor of Debtor, has filed a Motion to Lift Automatic Stay to Permit Exercise of Setoff Rights, a copy of which motion is annexed hereto and herewith served upon you.

NOTICE IS FURTHER GIVEN that written objections to said motion, if any, shall be filed with the Clerk of the United States Bankruptcy Court, whose address is 655 First Avenue North, Suite 210, Fargo, ND 58102-4932, with a copy mailed to counsel for Capital Credit Union, whose name and address is listed below, within fourteen (14) days from the date of the mailing of this Notice. Any objections not filed and served may be deemed waived.

Dated this 20th day of October, 2026.

**VOGEL LAW FIRM**

BY: */s/ Drew J. Hushka*

Caren W. Stanley (#06100)
cstanley@vogellaw.com
Drew J. Hushka (#08230)
dhushka@vogellaw.com
218 NP Avenue
PO Box 1389
Fargo, ND 58107-1389
Telephone: 701.237.6983
*ATTORNEYS FOR CAPITAL CREDIT UNION*