**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NORTH DAKOTA**

| | |
|---|---|
| In Re:<br>Pro-Mark Services, Inc.<br>Debtor | Court File No.: 24-30167<br><br>Chapter 7 Case |

**HARTFORD'S OBJECTION TO CAPITAL CREDIT UNION'S MOTION TO LIFT AUTOMATIC STAY TO PERMIT EXERCISE OF SETOFF RIGHTS [D.E. 327]**

Hartford Accident and Casualty Company ("Hartford") by and through its undersigned counsel, The Hustead Law Firm, *A Professional Corporation*, hereby objects to the Motion to Lift Automatic Stay to Permit Exercise of Setoff Rights.

## I. BACKGROUND

1. On May 17, 2024, Capital Credit Union ("CCU") filed a Notice of Motion and Motion to Lift Automatic Stay to Permit Exercise of Setoff Rights (the "2024 Motion") regarding the Pro-mark accounts labeled S-1 and S-12.

2. On August 12, 2024, the Court granted CCU's 2024 Motion.

3. On October 20, 2025, the Bankruptcy Appellate Panel for the Eight Circuit reversed and remanded stating the Intercreditor Collateral Agreement ("ICA") governs the disposition of the collateral. *In re Pro-Mark Servs., Inc.*, 673 B.R. 565, 573 (B.A.P. 8th Cir. 2025), reh'g denied, No. 24-6008, 2025 WL 3121635 (B.A.P. 8th Cir. Nov. 6, 2025).

4. On October 14, 2026, the Court issued its Memorandum and Order stating, in part, that tracing of the S-12 account remains a question of fact.

5. On October 16, 2026, hearing was held regarding CCU's 2024 Motion to Lift Automatic Stay to Permit Exercise of Setoff Rights. During the hearing, CCU introduced its

discovery of $529,871.78 onto the record, stating that the funds were found during CCU's investigation and tracing analysis.

6. On October 16, 2026, during the hearing, the Court stated that the discovered funds would be addressed at the adversary trial.

7. On October 20, 2026, CCU filed a Notice of Motion and Motion to Lift Automatic Stay to Permit Exercise of Setoff Rights (the "Motion").

## II. LEGAL ARGUMENT

### A. The Motion should be denied or deferred to the adversary trial.

The Cashier's Checks at issue in CCU's Motion originated from the accounts already at issue under CCU's 2024 Motion. CCU raised these funds on its own, and for the first time, at the October 16, 2026, hearing. In its Motion, CCU states that each of the cashier's checks at issue were, "drawn from funds on deposit in the S-12 Account." Motion, ¶¶ 14-17.

The funds originate directly from the account already at issue in the adversary proceeding, an account that is already contested. Stay relief is summary and, as the Court advised in the October 16, 2026, hearing, contested rights generally belong in adversary proceedings. *In re Pro-Mark* at 571. *See also In re Montgomery*, 262 B.R. 772, 775 (B.A.P. 8th Cir. 2001) (stating that the court's "discretion is bound in by the requirement that requests for the determination of the validity, priority, or extent of liens, or for the recovery of property, are to be made via adversary proceeding"). During the October 16, 2026, hearing, the Court determined that the funds would be addressed at the adversary proceeding. Because the Court already made a determination as to how the discovered funds at issue in CCU's Motion would be addressed, the relief requested by the Motion has been essentially stayed.

**B. The Intercreditor Collateral Agreement governs.**

The cashier's checks at issue in the Motion originate from the S-12 Account, which holds portions of the collateral that is the subject of the ICA, attached hereto as **Exhibit 1**. Under the ICA, Surety Priority includes "Proceeds." Ex. 1, § 2. "Surety Priority Collateral." Further, the ICA includes "instruments" under the definition for Proceeds. *Id.* Any funds taken from the S-12 Account in the form of a cashier's check, an instrument, falls under the definition of Proceeds of Surety Priority Collateral held by CCU under the ICA, and, as such, are at issue in the adversary proceedings.

The Motion rests on CCU's lien and on 11 U.S.C. § 553, and states that it is "the only entity with blanket liens." Motion, ¶ 10. However, the ICA is not narrowed only to the accounts of Pro-Mark; instead, it expressly states that, "[e]ach Collateral Party agrees that it will not at any time, either directly or indirectly, acting on its own or through another Person, take any action to void or avoid the Lien of the other Collateral Party in *any of the Collateral*." Ex. 1, § 8 (emphasis added). Under the terms of the ICA, *any* collateral held by the bank may be considered Surety Priority Collateral, and it is up to the fact determination through tracing to identify those amounts.

This issue was decided under the Reverse and Remand order of the Bankruptcy Appellate Panel, stating, "[t]he terms of the agreement between Hartford and CCU govern the priority of distributions." *In re Pro-Mark.* Because the funds originate from the account that must be traced prior to any summary relief being granted, CCU's Motion must be denied pending determination at the trial scheduled for February 24, 2027.

WHEREFORE, Hartford Accident and Casualty Company, respectfully Objects to Capital Credit Union's Motion to Lift Automatic Stay to Permit Exercise of Setoff Rights [D.E. 327] and requests that the court either deny the Motion without prejudice or defer the relief pending a determination at trial.

Dated this 19th day of November 2026.

THE HUSTEAD LAW FIRM
*A Professional Corporation*

*Original Signature is on file at The Hustead Law Firm, A Professional Corporation*

*/s/ Connor L. Cantrell*
Connor L. Cantrell, Esq.
The Hustead Law Firm
4643 S. Ulster Street, Suite 1250
Denver, Colorado 80237
(303) 721-5000
clc@thlf.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of November, 2026, a true and correct copy of the foregoing **OBJECTION TO MOTION TO LIFT AUTOMATIC STAY TO PERMIT EXERCISE OF SETOFF RIGHTS [D.E. 327]** was electronically filed with the Court and a correct copy of the same was delivered to all counsel of record.

*Original Signature is on File at The Hustead Law Firm, A Professional Corporation*

*s/ Connor L. Cantrell*
Connor L. Cantrell, Esq.